[Crim. No. 5399.   Second Dist., Div. Two.   Oct. 25, 1955.]

THE PEOPLE, Respondent, v. ARCH CLEMMONS, Appellant.

Max Tendler and Gerald Friedman for Appellant.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

McCOMB, J.—From an order denying defendant's motion for a new trial, after being convicted on two counts of grand theft by the court, sitting without a jury, defendant appeals. There is also a purported appeal from the "judgment."*

*Facts*: On June 28, 1951, a contract was entered into between Evelyn Cozen, Don Cozen, Ann Temkin, Al Temkin and defendant. This contract, which contemplated the build-

---

*The record discloses that no judgment was ever entered or pronounced. As no sentence was imposed, there was no judgment from which to appeal and such purported appeal will be dismissed. (*People* v. *Guerrero*, 22 Cal.2d 183, 184 [1] [137 P.2d 21]; *People* v. *Jones*, 36 Cal.2d 373, 375 [1] [224 P.2d 353].)

ing of an apartment house of which Mr. and Mrs. Cozen and Mr. and Mrs Temkin were to be the owners, and defendant Clemmons the general contractor, contained the following provisions:

"1. Contractor agrees to construct and complete in good, workmanlike and substantial manner, upon the real property hereinafter described, furnishing all labor, materials, tools and equipment therefor a (sic) necessary to fully complete a ten (10) Unit Apartment Building . . .

"2. The structure is to be constructed and completed in strict conformance with plans and specifications for the same signed by the parties hereto, a copy of which plans and specifications have been filed with the Lending Association or Building and Loan . . .

"3. In consideration of the covenants and agreements hereof being strictly performed and kept by Contractor, including the supply of all labor, materials and services required by this Contract, and the construction and completion of the structure, Owner agrees to pay to Contractor the sum of $39,950.00, in installments as follows:

"In accordance with the Construction Loan schedule as required by the Lending Association or Building and Loan."

On July 5, 1951, a construction loan agreement and an assignment of account was entered into between Mr. and Mrs. Cozen, Mr. and Mrs. Temkin and Southland Federal Savings and Loan Association, which included these provisions:

"The proceeds of this loan are not to pass into the possession or under the control of the undersigned, but, upon recordation of the Trust Deed, are to be placed in an account with the Association and such funds are to be used for the purposes set out herein . . .

"90% of the proceeds of the said account is to be disbursed by the Association during the period of construction in order to provide funds to the owner for the construction of said improvements in the proportions set out below, and may be paid to the undersigned, or either of them, or at the option of the Association to the contractors or material men or laborers engaged in such construction . . ."

A Southland Federal Savings check dated August 3, 1951, in the amount of $4,200 was made payable to Mr. and Mrs. Temkin and Mr. and Mrs. Cozen. It was necessary for each of the parties to endorse it before it could be turned over to defendant Clemmons. Thereafter, a letter was signed by the Cozens and the Temkins authorizing Southland Federal

to disburse the money directly to Clemmons as the building progressed.

Mr. Clemmons received a check from Southland Federal for $7,990, dated August 28, 1951. This was deposited to his account on August 29, 1951, at the Pico and Sycamore Branch of the Bank of America. On the day previous to this deposit his balance in the account was $101.56. When defendant received this check he also received a trust receipt which he signed and returned to Southland Federal Savings, reading in part thus:

"Received of Southland Federal Savings and Loan Association, Beverly Hills, California, the sum of SEVENTY NINE HUNDRED NINETY AND No/100 $7,990.00 which sum is received by me in trust, and as bailee, for the express use and purpose of paying in full for all labor performed and material furnished to date in the construction of a building on the premises known as 5656 San Vicente Blvd., and owned by Allen & Ann Temkin & Donald & Evelyn Cozen.

"It is thoroughly understood and agreed that no title to the above payment, or any part thereof, shall vest in the undersigned, or be used for any other purpose, until he has first paid in full for all labor performed and material furnished to date by all contractors, laborers and material men, in the construction of the above mentioned building, and releases have been secured covering such payments. Such releases or a break down statement showing a list of such payment will be filed with SOUTHLAND FEDERAL SAVINGS AND LOAN ASSOCIATION, at its office in Beverly Hills, California, upon request.

Please sign original copy and return to us."

Drawing on this account, defendant on August 29, 1951, paid to Mr. Karson, a plumber, the sum of $1,602.50; to Mr. Adams, an electrician, $1,960; to the McIntosh Roofing Company, $430; to Nelson Radio and TV, $150; and to Field Construction Company for carpentry, $700. All these disbursements, together with a few others which were minor, were for the Temkin-Cozen construction job.

Defendant disbursed $1,697.92 on another job, known as the Benasky job. He also paid $638.30 on the Sherbert job, and finally he disbursed $59.87 to the General Motors Acceptance Corporation to cover a car payment for Marjorie Davis, then in his employ.

A qualified accountant testified that he examined the books, ledgers and checks in this case and found from an

accounting viewpoint that $2,396.09 was expended by defendant for purposes other than the Temkin-Cozen job.

On October 5, 1951, defendant deposited a check from the Southland Federal in the amount of $7,990. He signed and returned to the Southland Federal and Savings a receipt in identical language to the trust receipt quoted *supra*.

The accountant testified to having examined the ledgers, books and exhibits pertaining to this check and that just prior to its deposit the balance in Mr. Clemmons' account was $74.45; that a total of $4,090.18 was disbursed for materials and to the subcontractors on the Temkin-Cozen job. This consisted primarily of a payment of $4,065 to Keith-Garrett, a plastering concern, and two other payments totaling approximately $24.

There were five disbursements in connection with another of defendant's jobs, known as the Sherbert job, which totaled $530.51. There was also a disbursement to Marjorie Davis, not in connection with the Temkin-Cozen job, for $125, and finally two other checks in the sums of $284.31, payable to the Collector of Internal Revenue, and $74.88, payable to the Department of Employment, were drawn against the account. These amounts, drawn for other than the Temkin-Cozen job, totaled $1,015.

Miss Manges, employed as a receptionist and bookkeeper by defendant testified that a partner of defendant in defendant's presence said, ''We want you to make a sheet the way we tell you because Mr. Temkin is coming in to see it''; that she had the correct records in her possession; that the sheet which she made was incorrect, and that it included notations of disbursements that had never been made; and that defendant and his partner both told her to make the false entries.

Mrs. Temkin testified that she never gave defendant permission to use any part of the proceeds of the loan for any other purpose than the cost of construction of the apartment house building. She further testified that more than $20,000 in liens were filed against the building. Mr. and Mrs. Cozen and Mr. and Mrs. Temkin were required to use approximately $7,000 of their own funds in settlement of these liens.

Defendant contends: First, that the money received by him from the Southland Federal Savings and Loan Association was his property; and second, that the monies which he received were appropriated by him openly and avowedly under a claim of title preferred in good faith, pursuant to the terms and conditions of his contract.

■ 1. The first contention of defendant is devoid of merit for the reason that in the contract between defendant and the complaining witnesses is the following language, in part:

"Owner agrees to pay to Contractor the sum of $39,950.00, in installments as follows:

"In accordance with Construction Loan schedule as required by the Lending Association or Building and Loan."

Each of the receipts signed by defendant and returned to the Southland Federal Savings contained this provision:

". . . . which sum is received by me in trust, and as bailee, for the express use and purpose of paying in full for all labor performed and material furnished to date in the construction of a building . . .

"It is thoroughly understood and agreed that no title to the above payment, or any part thereof, shall vest in the undersigned, or be used for any other purpose, until he has first paid in full for all labor performed and materials furnished to date by all contractors, laborers and material men, in the construction of the above mentioned building, and releases have been secured covering such payments . . ."

Clearly the foregoing evidence supports the trial court's finding that defendant received the monies in trust, to be used solely in connection with the construction of the building which he had agreed to erect for the complaining witnesses.

*People* v. *Holder,* 53 Cal.App. 45, 50 [199 P. 832], relied on by defendant, is not applicable to the facts in the present case. In that case, at page 50, the court said:

". . . . That is, the legislature has not the power to provide that a contractor who breaches his agreement to pay a certain class of debts with money that is his own shall, for that reason alone, be deemed guilty of a crime punishable with imprisonment. Nor has it the power so to interfere with the right of contract as to provide, in effect, that money paid to a contractor under his contract shall not be absolutely his own property to do with as he pleases, but shall be received by him in trust to pay a certain favored class of creditors."

In the present case it was not the Legislature that imposed the trust. · Defendant himself voluntarily assumed the trust and when he did so a trust was imposed on the money which he received. This trust he breached.

■ 2. There is likewise no merit in defendant's contention that he received openly and avowedly the money under claim of title preferred in good faith, and that therefore

section 511 of the Penal Code, which reads as follows, is applicable:

"Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable. But this provision does not excuse the unlawful retention of the property of another to offset or pay demands held against him."

Mr. Justice Griffin in *People* v. *Applegate,* 91 Cal.App.2d 163, 174 et seq. [204 P.2d 689], (hearing denied by the Supreme Court), states the applicable rule: ". . . It is not that defendant holds the money under a 'claim of right,' but he must hold it under a 'claim of title in good faith.' (*People* v. *Holmes,* 13 Cal.App. 212, 216 [109 P. 489].) . . . █ Even if, under the evidence, defendant was entitled to the benefit of an instruction under section 511, *supra,* the question whether he was withholding 'under a claim of title . . . in good faith' was one fact for the jury to determine."

█ In the instant case the trier of fact determined the issue as to his good faith adversely to defendant. Since this determination is supported by substantial evidence we are bound by the trial court's finding. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) █ It is clear that there was evidence that defendant was not appropriating the money under claim of title *in good faith* because Miss Manges, his bookkeeper, testified that he ordered her to prepare false entries on ledger sheets to be submitted for Mr. Temkin's inspection. This testimony was substantial evidence of defendant's bad faith.

The purported appeal from the judgment is dismissed for the reasons set forth, *supra.*

The order denying a motion for a new trial is affirmed.

Moore, P. J., and Fox, J., concurred.