[Crim. No. 5738. Second Dist., Div. Three. Aug. 15, 1957.]

THE PEOPLE, Respondent, v. HAROLD R. MARTIN, Appellant.

Haskell H. Grodberg for Appellant.

Edmund G. Brown, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

SHINN, P. J.—In a court trial Harold R. Martin was convicted of two offenses of grand theft in the taking from J. C. Teague of $1,400 in money and from Lewis Zaseck of $2,174 in money. He made a motion for a new trial, which was denied, and he was sentenced on each count ′to a term of one year in the county jail. He appeals from the judgment and the order denying his motion for a new trial. The grounds of the appeal are insufficiency of the evidence and error in the admission of evidence.

The conviction of grand theft from J. C. Teague was based upon evidence of the following facts. Defendant was a salesman in the Hollywood office of Tropic Industries, Inc., an Illinois company which distributes the Silver Skillet line of canned chili, hash and barbecued meat. In August 1954, Teague answered a newspaper advertisement, placed by defendant, which offered the opportunity of substantial profits in return for a $2,175 investment in a small part time business. On August 19, defendant sold Teague 10 vending machines known as "tropic chili bars," which are used in dispensing Silver Skillet foods, together with some eating utensils and cans of chili. Teague gave defendant a cashier's check for $2,174 which was sent to the company's home office in Chicago. Teague agreed to place the vending machines in 10 restaurants, drive-ins and bowling alleys selected by defendant. The machines were to be installed without any charge to the proprietors, and Teague was to service them and supply the retailers with Silver Skillet foods. Defendant told him he would net between $40 and $50 a month on each machine, based on a percentage of the sales price of food dispensed by the chili bars.

Martin gave Teague a list of 10 establishments and assured him that each retailer had agreed to permit installation of a machine. Shortly thereafter, Teague bought five more chili bars from defendant for $997. Only nine vending machines were ever installed, and these were all returned within a few weeks. Teague realized slightly over $100 from the sale of Silver Skillet products.

Upon being told that Teague wanted to sell his vending machines, defendant told Teague that he would dispose of 10 of the chili bars and pay Teague $1,500 from the proceeds of the sale. On November 26, defendant drove to Teague's house in a rented truck and picked up the 10 machines. He gave Teague his personal check for $100 as a token of good will and wrote "For Tropic Chili Bars" on the side of the

check. Defendant told Teague that he would sell the vending machines that afternoon and pay the $1,400 balance the next morning. He gave Teague a signed handwritten receipt which read: "Received from J. C. Teague Ten Tropic Chili Bars. Paid One Hundred dollars." He also handed him a blank piece of paper containing four or five ruled lines and said: "Now, I have got just enough time to deliver these machines in Long Beach if I get on the Freeway. . . . Sign this paper here which authorizes me to dispose of this product. . . . I have to have some evidence to show that I can sell these things."

Instead of going to Long Beach defendant took the machines to the Hollywood office and they were delivered the same day to Lewis Zaseck, who had purchased 10 chili bars from defendant for $2,174 three days previously. Teague stated that he never received any of the $1,400 from defendant.

The conviction of grand theft from Zaseck was based upon the following evidence. Early in November, Mr. and Mrs. Zaseck answered a similar advertisement and were contacted by defendant about a week later. Defendant stated that he was a representative of Tropic Industries, Inc., and explained to the Zasecks the company's distributorship scheme: They were to buy 10 vending machines and install them in retail establishments to be provided by defendant; they were also to furnish Silver Skillet food for the machines. He told them that he would select 10 flourishing locations which would first be clocked and timed to ascertain the volume of business. Defendant said that the chili bars would bring them a substantial monthly profit based on a percentage of the sales price of food sold through the machines, but neither Mr. nor Mrs. Zaseck could recall the amount defendant mentioned. Defendant also said that if the Zasecks were not satisfied with any of the locations, his representative would obtain better locations for them.

On November 23, Martin gave Zaseck what purported to be an agreement on behalf of Tropic to return Zaseck's money if he should become dissatisfied within 20 days. In reliance on the representations made by defendant, Zaseck signed a written contract for the purchase of 10 machines from Tropic Industries and Mrs. Zaseck gave Martin a cashier's check for $2,174, payable to her, which she endorsed as follows: "Tropics Industries Inc. Evelyn Zaseck."

Defendant did not send the check to Chicago but handed it instead to one Wiser, the branch manager. Wiser was

also the president of Plains Distributors, Inc., which shared the same suite of offices. Wiser endorsed and deposited the check to the account of Plains Distributors on November 23. There was in evidence a photostatic copy of the bank statement of Plains Distributors, showing that a check in the amount of $1,474.24 was debited to its account on November 24; there was also in evidence a deposit slip filled out by defendant for his personal account on the same date. One of the entries on the deposit slip had been crossed out; it read: "16-135 $1474.24." The deposit slip also showed a deposit on November 24 of $474.24 in cash and a $35 check; another deposit slip showed a $900 cash deposit to defendant's account on November 29.

As stated above, the vending machines were delivered to Zaseck on November 26. The following day, Carl Vasta gave him a handprinted "List Of Locations Secured." (Vasta was a location man who occasionally worked for Tropic Industries, Inc.) Zaseck and Vasta went to the 10 establishments on the list but were able to install only nine of the chili bars, all of which had to be removed within a few weeks at the proprietors' request; only two or three were ever used. Zaseck received less than $150 from the sale of Silver Skillet food. He made an appointment to see defendant but Martin did not keep the appointment. He also wrote two registered letters to defendant at the company's Chicago office in an effort to obtain a refund of the purchase price; he did not receive any answer to his first letter and the second was returned unopened because it had not been delivered to defendant.

The first contention to be noticed is the claim of insufficiency of the evidence to support the conviction of grand theft from J. C. Teague.

█ Theft is characterized as the felonious taking of property which is not one's own. (Pen. Code, § 484; *People* v. *Moorehead,* 104 Cal.App.2d 688 [232 P.2d 268].) █ Since the amendment in 1927 to section 484 of the Penal Code, an accused may be convicted of grand theft upon proof showing either larceny, embezzlement or obtaining money by false pretenses (*People* v. *Cannon,* 77 Cal.App.2d 678, 688-689 [176 P.2d 409]), and it is unnecessary to specify in the accusatory pleading the kind of grand theft with which the defendant is charged. (*People* v. *Brock,* 21 Cal.App.2d 601 [70 P.2d 210].) █ Embezzlement is the fraudulent mis-

appropriation of property by a person to whom it has been entrusted. (Pen. Code, § 503.)

■ It was the theory of the prosecution at the trial that defendant fraudulently misappropriated $1,400 of the proceeds from the resale of Teague's vending machines to Zaseck. The implied findings necessary to sustain the conviction on that theory of the case are: Defendant was the agent or bailee of Teague in holding the $1,400; the money belonged to Teague; defendant converted it; it was lawfully in his possession at the time of the conversion; and that defendant intended to deprive Teague unlawfully of his property. (*People* v. *Borchers,* 199 Cal. 52, 56 [247 P. 1084].)

Martin contends that implied findings that he was the agent or bailee of Teague, that he intended to deprive Teague of the money, and that he converted the $1,400, have no support in the evidence. He makes the following points: (a) The evidence shows, as a matter of law, that he bought the vending machines from Teague; (b) he openly appropriated the machines under a claim of title preferred in good faith; (c) evidence tending to show that he converted the machines cannot support an implied finding that he converted the proceeds of the sale to Zaseck; (d) there is no evidence to show that he formed an intent to deprive Teague of his property after taking possession of the machines.

There is no merit in the argument that Teague sold the chili bars to defendant and that defendant was not the agent or bailee of Teague, as urged under the first point. ■ Whether defendant was an agent or a purchaser was a question of fact, and our review of the evidence is limited to determining whether there was any substantial evidence to support a finding of agency. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) ■ Such a finding finds ample support in Teague's testimony that he delivered the machines to defendant with authority to sell them on his behalf and that defendant promised to pay him $1,500 upon the sale. Defendant testified that he bought the machines from Teague for $100. Defendant relies on a typewritten bill of sale which was in evidence and by which, he asserts, Teague sold him the chili bars for $100. He argues that any oral agreements made by the parties merged in the written instrument, hence the bill of sale establishes, as a matter of law, that he purchased the machines from Teague. The argument cannot be maintained. Teague stated that he signed a blank piece of ruled

paper which defendant represented to him to be an authorization to sell the machines. The bill of sale was typed on ruled paper and the court could well have inferred that the instrument was not filled out until after it had been signed by Teague. ■ Furthermore, the state was not a party to the transaction between defendant and Teague; it is not bound by the terms of the bill of sale and it could prove the true nature of the transaction by extrinsic evidence. (*People* v. *Chait*, 69 Cal.App.2d 503, 519 [159 P.2d 445], and cases cited.)

■ As to the second point, there is likewise no merit to the argument that defendant openly appropriated the machines under a claim of title preferred in good faith. (Pen. Code, § 511.) Whether a claim is advanced in good faith does not depend solely upon whether the claimant believes he was acting lawfully; the circumstances must be indicative of good faith. (*People* v. *Clemmons*, 136 Cal.App.2d 529 [288 P.2d 1021].) That was a question for the determination of the trier of fact. It was an absurd contention that defendant bought for $100 property recently purchased by Teague for more than $2,000, and the claim that he believed himself to be the owner was little short of ridiculous. (*People* v. *Applegate*, 91 Cal.App.2d 163 [204 P.2d 689].)

■ With respect to the third point, there is no substance to the argument that the evidence is insufficient to show a conversion of the $1,400. It is undisputed that the machines defendant sold to Zaseck were the identical machines he obtained from Teague and that Zaseck paid him $2,174 for them. There was also evidence from which the court could reasonably have inferred that about $1,400 out of the proceeds of the resale found its way into defendant's bank account.

It is contended, however, that because the Zasecks paid for the machines on November 23, and defendant obtained the chili bars from Teague on November 26, he did not hold the proceeds of the sale in trust for Teague. Hence, the argument runs, Martin could not have misappropriated the $1.400 and evidence that he converted the vending machines would be at variance with an information charging him with a misappropriation of the money. The argument is untenable.

Under his agreement with Teague, defendant was authorized to sell the chili bars and to accept payment therefor; it was his duty to account for $1,400 of the proceeds to his principal. ■ Where an agent is authorized to transmute property

from one form into another, he holds the transmuted property in trust for his principal in its new form; when defendant delivered the machines to Zaseck, as he had the right to do, the proceeds of the sale became impressed with a trust for the benefit of Teague and appropriation of the trust property with the intent to defraud Teague would constitute embezzlement. (*People* v. *Borchers, supra,* 199 Cal. 52, 58-59.) It is therefore immaterial that Martin obtained the money before he obtained the machines, and it is also immaterial that the money was never in Teague's possession. It is sufficient that Teague had a right to the money that he could assert against defendant. (Pen. Code, § 506; *People* v. *Applegate, supra,* 91 Cal.App.2d 163, 171-173.)

As to the fourth point, there is no merit to the argument that there was insufficient evidence that defendant formed an intent to deprive Teague of his property after obtaining lawful possession of the chili bars. The circumstances we have related are sufficient to sustain an implied finding that defendant intended to defraud Teague by obtaining the machines and dividing the proceeds of the sale with Wiser. It is immaterial whether he formed a fraudulent intention before or after he obtained the machines. It was grand theft in either case. (*People* v. *Shepherd,* 141 Cal. App.2d 367 [296 P.2d 919].)

Where criminal acts may constitute several forms of theft, depending upon how the evidence is viewed by the court, a judgment of conviction can be sustained upon evidence of any form of the offense. (*People* v. *Corenevsky,* 124 Cal.App. 2d 19, 24 [267 P.2d 1048], and cases cited.) If the court believed that a criminal intent was formed before defendant obtained the machines, the conviction was proper upon the theory of larceny by trick and device. (*People* v. *Mason,* 86 Cal.App.2d 445, 452-453 [195 P.2d 60].) If the court believed that defendant did not form an intention to defraud Teague until after he obtained the machines, it could find him guilty of embezzlement. (*People* v. *Walker,* 144 Cal. 1 [77 P. 705]; *People* v. *Fewkes,* 214 Cal. 142 [4 P.2d 538].) Under either theory, the conviction of grand theft is supported by the evidence.

The next contention to be considered is the insufficiency of the evidence to support the conviction of grand theft from Lewis Zaseck. It was the theory of the prosecution at the trial that defendant was guilty of theft in obtaining $2,174

from Zaseck by false pretenses. The implied findings necessary to sustain the conviction are as follows: "To support a conviction of theft for obtaining property by false pretenses, it must be shown that the defendant made a false pretense or representation with intent to defraud the owner of his property, and that the owner was in fact defrauded. . . . The false pretense or representation must have materially influenced the owner to part with his property, but the false pretenses need not be the sole inducing cause. (Citation.)" (*People* v. *Ashley,* 42 Cal.2d 246, 259 [267 P.2d 271].)

False pretense is defined as "a representation of some fact or circumstance calculated to mislead, which is not true." (*People* v. *Wasservogle,* 77 Cal. 173, 175 [19 P. 270].) Defendant argues that he made no false representations of fact to Zaseck and that a finding that he intended to deceive Zaseck is without support in the evidence. We cannot agree.

Defendant gave Zaseck a writing stating that he was a representative of Tropic Industries and that upon notice to him (Martin) at the Chicago office within 20 days from November 22 that Zaseck wished to terminate his association with Tropic "we will turn over his equipment canned foods and sundry items to another distributor in this local and refund J. Lewis Zaseck's monies." The writing was signed "by Harold R. Martin for Tropic Industries Inc." This, with oral representations, led Zaseck to believe that he was dealing with Tropic, the owner of the equipment, and in the business of merchandising foods on a national scale. Whether it was a material inducement to Zaseck in buying the chili bars was a question of fact for the determination of the trial court. (*People* v. *Hong Quin Moon,* 92 Cal. 41 [27 P. 1096]; *People* v. *Kemp,* 124 Cal.App.2d 683, 687-688 [269 P.2d 186]; *People* v. *Adams,* 137 Cal.App.2d 660, 668 [290 P.2d 944].) Defendant had already promised Teague that he would find a purchaser for Teague's equipment and supplies and from subsequent events it could fairly be inferred that he intended to acquire them from Teague for himself and not for Tropic Industries. Aside from all the other representations, which could be considered as mere promises, the representation that Tropic was undertaking to return Zaseck's money in a certain event was false, calculated to deceive Zaseck, and was undoubtedly made for that purpose. We need not discuss other features of the representations further than to say that those respecting the advantages to be gained by Zaseck could

scarcely have been made in good faith, in view of the fact that the very machines which were being sold to Zaseck were the ones to be taken back from Teague because they had produced nothing but disappointment. This was a fact well known to defendant. He had every reason to believe that Zaseck's investment would meet the same fate. The representation that Zaseck was dealing with Tropic was material, and it was reasonable to believe that Zaseck relied upon it. A single false material representation was sufficient to constitute the offense. (12 Cal.Jur. 469-470; *People* v. *Cravens*, 79 Cal.App.2d 658, 664 [180 P.2d 453].)

 The final contention presented on the appeal is that the court erred in receiving in evidence the deposit slip made out by defendant for his personal account on November 24. It is argued, in this connection, that the ticket was not the best evidence that defendant obtained a $1,474 check from Wiser and that no proper foundation was laid for the introduction of secondary evidence. The argument is without merit.

Defendant testified on direct examination that he received $750 from Tropic Industries as his commission on the sale to Zaseck, and he denied on cross-examination that he obtained the check issued by Plains Distributors. Defendant was shown the deposit slip and the district attorney was permitted to attempt to refresh his recollection. After considerable evasion, defendant admitted filling out the ticket.

Although the listing was crossed out the ticket was competent against defendant because he admitted writing it and it indicated that he had a check for $1,474. It was relevant in that, together with other evidence of contemporaneous cash deposits to his own account, it tended to prove that he received about $1,400 from Wiser on the Zaseck sale. And it was material, not only to contradict his testimony that he received no more than a $750 commission, but also to establish the falsity of his representations to Zaseck that the latter was dealing with the company, and to show that he retained the proceeds of the sale of Teague's vending machines. If he had such a check it was a fair inference that it was the one issued by Plains Distributors. Defendant offered no explanation of the cash deposits which, except for $50, equalled the amount of the check. Evidence of these circumstances was not offered to prove, as a fact, that defendant was named as payee of the check. The People were relying only upon the inference that could be deduced from the circumstances.

 Evidence other than the writing itself is admissible to prove issuance or execution of a writing. (*People* v. *Skeen,* 93 Cal.App.2d 489 [200 P.2d 132].) And such evidence was clearly admissible to prove that defendant had in his possession a check in the exact amount of one issued by Plains Distributors. The deposit slip was properly admitted in evidence.

The judgment and the order denying a new trial are affirmed.

Wood (Parker), J., and Vallée, J., concurred.