[Crim. No. 3664. First Dist., Div. Two. Sept. 6, 1960.]

THE PEOPLE, Respondent, v. PATRICK CLANCY et al., Appellants.

404

Gregory S. Stout for Appellants.

Stanley Mosk, Attorney General, Doris H. Maier and Raymond M. Momboisse, Deputy Attorneys General, Thomas C. Lynch, District Attorney, and Francis Mayer, Chief Assistant District Attorney, for Respondent.

DRAPER, J.—Defendants Clancy, Vandewark and Matthews were convicted of grand theft (Pen. Code, §§ 487, 484) after trial by the court without a jury. All were admitted to probation, Clancy and Vandewark on condition that they make restitution, pay fines, and serve time in county jail. Clancy and Vandewark appeal.

Clancy was president, Vandewark treasurer and Matthews corresponding secretary of Operating Engineers Local Number 3. This union owned a number of automobiles, and rather frequently turned in used cars on the purchase of new ones. Substantial discounts were granted to the union on its purchases of new cars.

Before April, 1955, the discount on new cars purchased from C. M. Murphy Oldsmobile Company, a San Francisco dealer, had been credited by deducting it from the new car price or by adding it to the trade-in allowance. In April, Vandewark talked to a Murphy salesman and arranged that

subsequent discounts be divided, half deducted from the new car price, and half added to the trade-in allowance for the union's used car. Purchase price of the used cars was to be paid by Murphy's check.

Over the next 17 months, 16 used cars of the union were sold to Murphy. In each case, check for the purchase price was made out to Clancy (4), Matthews (5) or Vandewark (7) as the latter directed. In each case, the payee paid to the union less than he received from Murphy. In 14 instances, the difference retained by the individual officer was $400 each. In each of the remaining two instances the amount retained was $375. All such Murphy checks were delivered by Murphy either to Vandewark or Matthews at the union office. Although Clancy received no check by direct delivery from Murphy, it is established that he did receive four checks, and retained the amount by which they exceeded his payments to the union. One of the certificates of registration (pink slip) was endorsed on behalf of the union by Vandewark, in the other 15 instances by Matthews. In no case did such document of title show a defendant as transferee.

Although the union books in some cases show sale to one of the defendants, in fact each Murphy check was delivered to the benefited defendant before the latter made the lesser payment to the union.

Appellants first assert error in the admission in evidence of business records of the union and the Murphy agency. The argument is that these records are inadmissible because not prepared by defendants or under their direction. But appellants take altogether too narrow a view of the rule upon which they rely. ▆ It is true that where the essence of the charge is falsification of business records, the fact of knowledge must be brought home to a defendant (*People* v. *Talbot*, 220 Cal. 3, 18 [28 P.2d 1057]; *People* v. *Blackman*, 127 Cal. 248 [59 P. 573]). Similarly, on a charge of sale of corporate stock in excess of the amount authorized by permit, books showing the amount previously issued are admissible only where it is shown that defendant had knowledge thereof (*People* v. *Doble*, 203 Cal. 510 [265 P. 184]). But neither of those situations is presented here. There is no rule prescribing that no business records are admissible against any defendant save one who made or directed the entries. On the contrary, such records have been repeatedly held admissible to establish facts relevant to the charge (see *People* v. *Sorrentino*, 146 Cal. App.2d 149, 162 [303 P.2d 859]; *People* v. *Terrell*, 138 Cal.

App.2d 35 [291 P.2d 155]; *People* v. *Gorgol,* 122 Cal.App.2d 281, 295-296 [265 P.2d 69]; *People* v. *Richardson,* 74 Cal. App.2d 528, 542 [169 P.2d 44]; *People* v. *Robinson,* 107 Cal. App. 211, 225-226 [290 P. 470]; *People* v. *Woollacott,* 80 Cal.App. 275 [251 P. 826]).

 In the case at bar, it should be noted that the union bookkeeper testified that in each case he made the entry as to amount paid, and by whom, at the direction of the paying defendant. The Murphy books show the amounts paid by the dealer and to whom. The union's books show the amount paid to it and by whom. There is no issue as to the accuracy of these entries. In fact, portions of appellants' arguments are based implicitly upon the assumption of their accuracy. It is clear that they are wholly relevant to the issues here presented. An adequate foundation for the admission of these business records was laid, and there is no error in their admission.

 Appellants next contend that the evidence is insufficient to establish embezzlement. The argument is that they did not possess the automobiles as agents or bailees of the union, but were in fact and in law legal owners, and thus dealing with their own property. The evidence does not sustain this claim. Rather, it clearly warranted, if it did not compel, the finding of the trial court that the sales, individually and collectively, were but a scheme of appellants to convert union property to their own use. All the sales took place only after Vandewark had negotiated the altered method of trading in used cars. In each instance, the "purchasing" defendant directed the entry to be made when he paid the union. All but three of those entries show Murphy, rather than one of the defendants, as purchaser. In no case was a document of title transferred to the name of a defendant. Rather, each ran to Murphy. In each case, the payment to the union by a defendant was made after Murphy had paid that defendant a larger amount. The conclusion is inescapable that the defendants were converting union property, of which they were trustees (*People* v. *Swanson,* 174 Cal.App.2d 453, 457-458 [344 P.2d 832]) to their own use. Whether defendants were purchasers or trustees was a question of fact (*People* v. *Martin,* 153 Cal.App.2d 275, 282 [314 P.2d 493]) and the trial court has resolved the question against appellants.

Appellants also contend that they appropriated the property "openly and avowedly, and under a claim of title pre-

ferred in good faith," and thus cannot be guilty of embezzlement (Pen. Code, § 511). But that issue, too, is one of fact (*People* v. *Martin, supra,* 153 Cal.App.2d 275, 283; *People* v. *Clemmons,* 136 Cal.App.2d 529, 535 [288 P.2d 1021]). The trial court found against appellants. The evidence summarized above is ample to sustain that finding. It must be remembered that good faith in the claim of title is essential. To overlook this factor would be to hold that the more brazen theft is less punishable.

Finally, appellants argue that there is no evidence to make each liable for all the thefts. But the evidence heretofore summarized clearly warrants this result. Direct evidence implicates both Vandewark and Matthews. As to Clancy, the president of the union and a sharer in the profits of the nefarious scheme, the circumstances clearly support a finding of his knowing participation in all 16 sales. Whether he be deemed a principal as aider and abettor, or a conspirator (*People* v. *Massey,* 151 Cal.App.2d 623 [312 P.2d 365]), his conviction is supported by the evidence.

Judgments affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.