[Crim. No. 18713. In Bank. Feb. 9, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES HENRY STEWART, Defendant and Appellant.

## COUNSEL

Richard G. Sherman for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHARDSON, J.**—Defendant Charles Henry Stewart was charged by information with 10 counts of grand theft in violation of Penal Code section 487, subdivision 1. Following a jury trial in the Los Angeles County Superior Court, he was found guilty on nine of those counts, and sentenced to state prison for the term prescribed by law. Sentence was suspended and defendant was placed on five years' probation on the condition that he spend one year in the county jail. On appeal, defendant contends that the trial court committed prejudicial error in its instructions to the jury. We have concluded that certain of the arguments presented are meritorious, and that the conviction should be reversed.

From 1967 to 1973 defendant served as general manager of San Pedro Motors, an automobile sales dealership. The stock of San Pedro Motors, a corporation, was owned 50 percent by Virgil Keith, defendant's father-in-law, and 50 percent by Richard Iverson. Keith was president of the corporation, and Iverson was its secretary-treasurer. Five persons, including defendant, were authorized to write checks on the corporate account.

From 1968 to 1971, defendant wrote numerous checks on San Pedro Motors' account in the aggregate sum of $195,088.08, which he used for his own purposes. During this period, he repaid $164,324.53 to San Pedro Motors. From January 1972 to January 1973 he wrote additional checks, also for his personal use, totalling an additional $93,832.28. An audit of the corporate books in 1973 reflected that, at the time of the audit, defendant owed San Pedro Motors approximately $104,000. The most recent entry in the corporate books revealed a balance owing by defendant of $79,965.03. Defendant used the moneys he had appropriated to invest in the stock market.

Defendant drew the checks in question without informing the company's bookkeeper that he was doing so. However, he made no attempt to conceal his activities, and at the end of each month, when the company received its statements from the bank, the bookkeeper would list the checks as accounts receivable from defendant. On several occasions the bookkeeper discussed with defendant the withdrawals he was making from the company's accounts, and at one point informed him that San Pedro Motors was short of cash and that the funds in question were needed to maintain the business' operations. Although defendant assured her that he would repay the money, he never did so.

On January 8, 1973, Iverson was informed by the State Board of Equalization that the Bank of America had, for insufficiency of funds in the corporate account, refused to honor a San Pedro Motors' check for $23,244.49, which sum had been intended for payment of the state sales tax owed by the company. Upon learning of this, Iverson ordered an audit by the company's accountants, and for the first time became aware of the substantial withdrawals defendant had been making. At a meeting on January 15, 1973, defendant admitted to Iverson that he had taken approximately $80,000 to invest in the stock market for his personal benefit. On January 22, defendant conceded that he owed San Pedro Motors approximately $100,000, but presented Iverson with a document purportedly prepared by defendant's stock broker showing a balance due

defendant on his investments of $140,000. Subsequently, defendant admitted that he had typed this document himself, and revealed that in fact his broker owed him nothing, but, rather, that defendant was in debt to his broker.

Defendant's sole defense to the charges of embezzlement which were subsequently filed was that he was in fact authorized, or believed he was authorized, to write the checks and use the money for his own investments. He testified that Keith had given him permission to withdraw corporate funds for personal use from time to time. He believed Keith was the sole owner of the company and that Iverson was just an employee. He had been told by Keith that the business would become defendant's upon Keith's death, and, in fact, an agreement had been entered into with the Buick Division of General Motors to this effect, provided certain conditions were met. As noted above, defendant made no attempt to conceal the fact that he had taken the funds in question. Defendant claimed that he never thought he was stealing or embezzling, and that at all times he believed he was acting legally and within the scope of his authority.

Keith testified that he recalled authorizing defendant to take perhaps $2,000 from the company for defendant's home improvements, but he was unaware of the extent of defendant's dealings in the stock market or of the substantial sums of money defendant was withdrawing from corporate accounts.

. In support of his theory, defendant offered two instructions which were rejected by the trial court as being inaccurate statements of the law. Proposed defense instruction No. 2 read as follows: "It is a defense to the charge of embezzlement if the defendant was under the belief that he was acting within the scope of his authority." In his instruction No. 4 defendant proposed that the jury be told: "Lack of concealment may be considered by you as evidence of a good faith belief that the defendant was acting within the scope of his authority and as evidence of a lack of fraudulent intent."

Defendant now contends that the above instructions were correct and should have been read to the jury as submitted, or, alternatively, that the trial court was under a duty, *sua sponte*, to give a properly worded instruction to the effect that a belief by defendant that he was authorized to take the money as he did constituted a defense to embezzlement. We agree with the latter argument.

Under Penal Code section 511 it is a defense to embezzlement if ". . . the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable." California authority in interpreting section 511 has indicated that where an individual honestly believes that he is authorized to appropriate and use property which he is accused of embezzling, the fraudulent intent which is a necessary element of that crime is absent. (See *People* v. *McManus* (1960) 180 Cal.App.2d 19, 40 [4 Cal.Rptr. 642]; *People* v. *Morley* (1928) 89 Cal.App. 451, 457 [265 P. 276]; 1 Witkin, Cal. Crimes (1963) § 395, p. 366.) ". . . [A] conversion of property intrusted is not embezzlement if it was due to a mistake giving rise to a bona-fide belief of authority to appropriate, whether the 'belief was well founded or not.' " (Perkins on Criminal Law (2d ed. 1969) at p. 941.) The People concede that had defendant convinced the jury that he acted in good faith this would have established a complete defense.

However, it is clear not only from the terms of section 511 but from statements in numerous authorities that a belief in one's authority to appropriate is a defense only when maintained in "good faith." (See *People* v. *Clancy* (1960) 184 Cal.App.2d 403, 406-407 [7 Cal.Rptr. 532]; *People* v. *Proctor* (1959) 169 Cal.App.2d 269, 276 [337 P.2d 93]; *People* v. *Photo* (1941) 45 Cal.App.2d 345, 352-353 [114 P.2d 71]; *People* v. *Ranney* (1931) 213 Cal. 70, 77 [1 P.2d 423].) The defendant failed to include this element in his proposed instruction No. 2. Such an omission was fatal, rendering the instruction incorrect in the form in which it was submitted.

■ In further support of his proposed instruction No. 2, defendant argues, however, that *any* belief must be held in "good faith," and that if the jury accepted his assertions that he believed he had been authorized to appropriate San Pedro Motors' funds for his own purposes, it must also have found that such belief was a bona fide one. He asserts that there is simply no such thing as a "bad faith belief," in effect arguing that the wording of section 511 and the requirements of cases discussing the defense recognized therein are meaningless. A similar contention was rejected long ago in *People* v. *Holmes* (1910) 13 Cal.App. 212, 216-217 [109 P. 489], wherein defendant had proposed an instruction which would have acquitted him of embezzlement if he "believed" he had the right to transfer the property in question. The court held the instruction was inadequate for failure to include the element of good faith. As the court stated, "Section 511 is predicated upon an avowed claim in good faith of the entire title to the property appropriated." (P. 217.)

Subsequent cases have explained that, "Whether a claim is advanced in good faith does not depend solely upon whether the claimant believes he was acting lawfully; the circumstances must be indicative of good faith." (*People* v. *Martin* (1957) 153 Cal.App.2d 275, 283 [314 P.2d 493]; accord, *People* v. *Scholder* (1956) 143 Cal.App.2d Supp. 836, 839 [300 P.2d 384].) For example, the circumstances in a particular case might indicate that although defendant may have "believed" he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith. ■ Thus, we conclude that defendant's proposed instruction No. 2 was an incomplete statement of applicable law and, accordingly, was properly rejected by the trial court.

■ On the other hand, substantial authority suggests that the court was under an affirmative duty to give, *sua sponte,* a correctly phrased instruction on defendant's theory. ■ "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390]; and see *People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].) Included within this duty is the ". . . obligation to instruct on defenses, . . . and on the relationship of these defenses to the elements of the charged offense . . ." where ". . . it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense . . . ." (*People* v. *Sedeno, supra,* at p. 716.)

■ Applying the above principles to the instant case, we conclude that the trial court was under an obligation to give, *sua sponte,* a correct instruction setting forth the general theory relied upon by defendant. There can be no doubt that the defendant's reliance on the subject defense was made clear to the trial court. In fact, at one stage of the proceedings, counsel stated to the court that the "only" defense which would be asserted was that defendant was actually authorized, or, alternatively, possessed a good faith belief that he was so authorized, to appropriate corporate funds in the manner disclosed in the record. Thus, the asserted defense was a principle "closely and openly connected with the facts before the court" within the meaning of *People* v. *St. Martin, supra,* and *People* v. *Sedeno, supra,* in which event defendant was entitled to have the question presented to and determined by the jury.

██ We also hold that defendant's proposed instruction No. 4, *supra,* (lack of concealment as evidence of good faith belief in authority and lack of fraudulent intent) was a correct statement of the law and should have been given as requested. The People cite *People* v. *Talbot* (1934) 220 Cal. 3, 13 [28 P.2d 1057], as authority for the trial court's refusal to give that instruction. As germane to our consideration of instruction No. 4, however, *Talbot* holds only that there may be embezzlement where the appropriation is made openly. In fact, *Talbot* supports defendant's contention that lack of concealment is relevant to the existence of felonious intent.

██ Finally, the People urge that even if the court erred in failing adequately to instruct the jury on defendant's theory, such error was not prejudicial since, under the instructions given which defined embezzlement and the requisite intent, the jury must necessarily have determined the issue of intent against the defendant. We must reject the argument. ██ ". . . [A] defendant has a constitutional right to have the jury determine every material issue presented by the evidence, . . ." (*People* v. *Sedeno, supra,* 10 Cal.3d, at p. 720.) An erroneous failure to instruct on an affirmative defense relied upon by the defendant constitutes a denial of this right which "is in itself a miscarriage of justice . . . ." (*People* v. *St. Martin, supra,* 1 Cal.3d 524, 532; and see *People* v. *Oehler* (1970) 7 Cal.App.3d 685, 688-689 [86 Cal.Rptr. 703], in which a conviction was reversed for failure to instruct on the defense theory in an embezzlement prosecution.) ". . . [S]uch error cannot be cured by weighing the evidence and finding it not reasonably probable that a correctly instructed jury would . . ." not have convicted the defendant. (*People* v. *Sedeno, supra,* at p. 720.)

██ It is true that a failure to instruct where there is a duty to do so can be cured if it is shown that "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions." (*People* v. *Sedeno, supra,* 10 Cal.3d, at p. 721.) ██ In the instant case, under the general instructions defining fraudulent intent, we conclude the jury did not necessarily find that defendant lacked a good faith belief that he was acting in a manner authorized by his employer. The court instructed the jury that: "In the crime of embezzlement, there must exist in the mind of the perpetrator the specific intent to fraudulently appropriate property to one's own use, and unless such intent so exists that crime is not committed." (CALJIC No. 3.31) [¶] "Theft known as embezzlement consists of the fraudulent appropriation of money or other property by a

person to whom it has been entrusted. The law prescribes that every trustee, broker, agent, or other person entrusted with or having in his control property of another, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of theft by embezzlement." (CALJIC No. 14.07.)

The jury in the course of its deliberations asked for an instruction further defining "fraudulent intent" and was given the following definition: "Fraud is defined as any act that involves a breach of duty, trust, or confidence, and which is injurious to another, or by which an undue advantage is taken of another, and an act is declared to be fraudulent that is characterized by fraud."

We think a jury could have determined that defendant's act was fraudulent under the above definitions and still have found that, nevertheless, he believed in good faith that his actions were legal. Furthermore, the trial court did instruct the jury that, "if the defendant was *in fact* authorized to borrow the subject monies for his own personal use, said authorization is a complete defense to the offenses charged." (Italics added.) Giving this instruction, albeit correct in itself, without the reading of an appropriate instruction relating to defendant's subjective good faith belief as a defense, might well have led the jury to conclude that the existence of defendant's subjective belief was irrelevant, thereby compounding the already existing error.

The failure to give proper instructions necessary for the jury's consideration of the proffered defense constituted prejudicial error.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.