[No. B078018. Second Dist., Div. Five. Jan. 4, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD J. CREATH, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV of the Discussion.

COUNSEL

Harland W. Braun for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Linda C. Johnson and S. Allison Hughes, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GRIGNON, J.—Defendant and appellant Ronald J. Creath appeals from a judgment after a jury trial resulting in his conviction of grand theft by embezzlement and filing false income tax returns. While a union officer, defendant used a union-issued credit card and other union funds to pay his personal expenses amounting to more than $250,000. In the published portion of this opinion, we conclude defendant did not present substantial evidence of a claim-of-right defense to the charge of grand theft by embezzlement. Thus, we do not address his contentions that the trial court misinstructed on that defense.

In the unpublished portion of this opinion, we address defendant's contentions that the trial court (1) failed to instruct the jury on mistake of law as a defense to, and erred in giving a general intent instruction on, the tax return charges; and (2) committed sentencing error in imposing the upper term.[1] We also address the prosecution's contention that the trial court erred by failing to order direct restitution to the victim. We affirm.

---

[1] Additional contentions raised by defendant in his opening brief were expressly abandoned by him in his reply brief.

## Procedural Background

Defendant was charged by information with one count of grand theft by embezzlement between January 1, 1985, and December 31, 1990, in violation of Penal Code section 487, former subdivision 1.[2] It was further alleged defendant took property of a value exceeding $150,000 within the meaning of Penal Code section 12022.6, subdivision (b). Defendant was also charged with five counts of filing a false income tax return, for the years 1986, 1987, 1988, 1989 and 1990, in violation of Revenue and Taxation Code section 19405, subdivision (a)(1). The jury convicted defendant as charged. Defendant was sentenced to state prison for five years. He appeals.

## Facts

Defendant was a firefighter employed by the County of Los Angeles from 1960 to 1992. During the years in question, defendant held the rank of captain and earned approximately $6,000 per month. Defendant worked an average of 56 hours per week composed of 24-hour shifts.

Los Angeles County firefighters were represented by Local 1014 of the firefighters union. During the years in question, the union represented approximately 2,400 firefighters. It was governed by an executive board consisting of a president, two vice-presidents, a treasurer and seven directors. Officers and directors of the union were not paid a salary for their services. They did receive certain other forms of compensation, however. With prior approval, they were permitted to be released for 12 hours of their 24-hour shifts to perform union duties. Thus, the officers and directors were permitted to perform union activities while being compensated by the county. On days when they worked for the union and for which they were not being compensated by the county, the union paid them a per diem of $70 per day. The number of per diems paid per month ranged from seven to ten, depending on the office held. The officers and directors also received a $590 annual clothing allowance from the union. Mileage, meals and lodging were reimbursed to officers and directors for travel on union business. When air travel was required, the union would pay the officer or director the cost of first class airfare, permit the recipient to purchase excursion tickets and allow the recipient to keep the difference. Although the airfare difference and the per diems constituted taxable income to the officers and directors, they were treated as nontaxable expenses by the union and the recipients. Union-related expenses were reimbursed to officers and directors after submission of claims forms; the officers were issued a union credit card (MasterCard) for the payment of union expenses.

---

[2]This subdivision is presently codified as Penal Code section 487, subdivision (a).

Defendant was treasurer of the union from 1985 to 1990. During this period, he performed union work while released from duty on county pay, received the appropriate number of per diems on a monthly basis, was reimbursed for union-related expenses and received the first class airfare bonus. Defendant did not report per diems or the airfare bonus as taxable income on his state income tax returns. However, none of these perquisites or the failure to report the perquisites as taxable income was the subject of the instant prosecution.

As treasurer, defendant supervised the payment of the union bills. The union maintained two checking accounts, a general operating account and a political or legislative account. The accounts required the signature of both the president and the treasurer on each check. It was the practice of the union, however, for the president to presign a large number of blank checks thereby permitting the treasurer to issue the checks as the treasurer saw fit. Defendant used union funds to pay his personal expenses. Every month, defendant paid his personal American Express and Diners' Club credit card bills in full with union checks. In addition, defendant used his union-issued MasterCard to pay for personal expenses. Defendant's personal expenses included family restaurant bills, family vacations, home improvements and personal car repairs.

Defendant paid personal expenses with union funds in the following amounts:

|  | American Express Card | Diners' Club Card | MasterCard | Total |
|---|---|---|---|---|
| 1985 | $ 1,343.91 | $10,941.52 | $ 14,345.83 | $ 26,631.26 |
| 1986 | $20,048.89 | $ 9,121.74 | $ 25,026.84 | $ 54,197.47 |
| 1987 | $15,211.59 | $ 5,092.98 | $ 17,616.79 | $ 37,921.36 |
| 1988 | $13,071.60 | $12,006.55 | $ 13,798.04 | $ 38,876.19 |
| 1989 | $15,584.37 | $15,062.59 | $ 16,096.41 | $ 46,743.37 |
| 1990 | $16,263.73 | $18,262.09 | $ 16,353.95 | $ 50,879.77 |
| Total | $81,524.09 | $70,487.47 | $103,237.86 | $255,249.42 |

In June 1990, defendant was confronted with information indicating he had paid one of his personal American Express credit card bills with a union check. Defendant falsely stated that the magnetic strip on his union-issued MasterCard was defective, requiring him to use his personal credit card. Defendant's explanation was accepted, but he was cautioned not to engage in the practice again. In the fall of 1990, defendant was defeated in his bid for reelection as treasurer. In mid-December 1990, the union discovered defendant had been using union funds to pay personal bills. As he was

leaving office, defendant indicated there might be a problem with the union books.

Defendant did not report any of the $255,249.42 as income on his state income tax returns.

Defendant presented a claim-of-right defense. He testified he had an honest albeit unreasonable belief that the money was owed to him because of the number of hours he had devoted to union affairs and the additional compensation opportunities he had foregone to work for the union. Prior to undertaking the position of treasurer, defendant had worked considerable overtime. If he had worked all the overtime he was allowed, he would have earned an additional $50,000 per year. Defendant could have also worked as a retail clerk or a real estate licensee in the time he devoted to the union. Defendant had substantial financial obligations: he was married with 10 children and owned a $460,000, 5,000-square-foot home. If he had not taken the union money to pay some of his personal expenses, he would have been unable to continue as treasurer.

Defendant kept the receipts for the credit card bills in the treasurer's office. He did not try to hide the fact of the payment, although he did not call it to anyone's attention. During the period he was treasurer, the union's books were audited to some extent on a regular basis by independent auditors and on one occasion by the Internal Revenue Service. No problems were brought to his attention by the auditors.

## DISCUSSION

### I.  *Embezzlement/Claim of Right*

Defendant contends the claim-of-right instruction given by the trial court: (1) incorrectly implied that belief in a claim of right must be reasonable; (2) wrongly required that the taking be open and avowed; and (3) impermissibly shifted the burden of proof to the defense.[3] We need not reach these claims, as we conclude defendant did not present substantial evidence of a claim-of-right defense.

---

[3]The trial court instructed the jury as to the claim-of-right defense as follows: "The defendant's honest belief, even if mistakenly and unreasonably held, that he had a right to the property taken negates the felonious intent necessary to convict him of grand theft. [¶] An unreasonable belief that he had a right to the property will suffice so long as the claim was made in good faith. [¶] Whether a claim was made in good faith does not depend solely upon whether the defendant believes that he was acting lawfully; the circumstances must be indicative of good faith. [¶] It is also necessary that at the time the defendant took the property that he did so openly and avowedly." The trial court further instructed the jury in the language of CALJIC No. 2.90 as to the prosecution's burden to prove defendant's guilt beyond a reasonable doubt. The prosecution and defense jointly proposed the first two

■ Theft is the unlawful taking of property of another. (*People* v. *Martin* (1957) 153 Cal.App.2d 275, 281 [314 P.2d 493].) Theft includes the crimes of larceny, embezzlement, larceny by trick and device, and obtaining property by false pretenses. (Pen. Code, §§ 484, 487, 490a, 503; *People* v. *Schwenkner* (1961) 191 Cal.App.2d 46, 50 [12 Cal.Rptr. 408].) The information need not specify the kind of theft charged. (*People* v. *Martin, supra,* 153 Cal.App.2d at p. 281.) ■ "Embezzlement is the fraudulent misappropriation of property by a person to whom it has been entrusted." (*Id.* at pp. 281-282.) "The gist of the offense is the appropriation to one's own use of property held by him for devotion to a specified purpose other than his own enjoyment of it." (*People* v. *Miller* (1961) 188 Cal.App.2d 156, 167 [10 Cal.Rptr. 326].)

"Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred [*sic*] in good faith, even though such claim is untenable. But this provision does not excuse the unlawful retention of the property of another to offset or pay demands held against him." (Pen. Code, § 511.)

■ Under Penal Code section 511, a claim-of-right defense to embezzlement is not established where an employee unilaterally determines that he or she is entitled to certain wages and thereafter, without authorization, appropriates the property of the employer in purported payment of such wages.[4] (*People* v. *Proctor* (1959) 169 Cal.App.2d 269, 277 [337 P.2d 93]; *People* v. *Ranney* (1932) 123 Cal.App. 403, 409 [11 P.2d 405]; *People* v. *Holmes* (1970) 5 Cal.App.3d 21, 24-25 [84 Cal.Rptr. 889]; *People* v. *Schwenkner, supra,* 191 Cal.App.2d at pp. 50-51; *People* v. *Miller, supra,* 188 Cal.App.2d at pp. 167-168.) In *Proctor,* an employee of the victim embezzled a $1,500 check from her employer. This appellate district concluded: "In the final analysis, at most, appellant claims the proceeds of the check here in question as an offset against a debt due her for overtime wages. This is not a defense contemplated by section 511 of the Penal Code, which does not excuse the unlawful retention of the property of another to offset or pay demands held against him [citation]." (*People* v. *Proctor, supra,* at p. 277; *People* v. *Schwenkner, supra,* at pp. 50-51 [the defendant bookkeeper made out and cashed checks of her employer's clients allegedly in

paragraphs of the claim-of-right instruction. Defendant objected to the last two paragraphs of the instruction. Defendant also proposed the following additional language, which was refused: "The prosecution must prove beyond a reasonable doubt that the defendant did not have a belief, either reasonable or unreasonable, that he had a right to the property."

[4]We reject defendant's contention that a claim-of-right defense to an embezzlement charge need not satisfy the requirements of Penal Code section 511. *People* v. *Butler* (1967) 65 Cal.2d 569 [55 Cal.Rptr. 511, 421 P.2d 703], relied on by defendant for this proposition, did not involve a charge of embezzlement, but rather a charge of first degree felony murder based on robbery. (*Id.* at p. 577 (dis. opn. of Mosk, J.).)

payment for overtime]; *People* v. *Ranney, supra,* at p. 409 [commissions]; cf. *People* v. *Stewart* (1976) 16 Cal.3d 133 [127 Cal.Rptr. 117, 544 P.2d 1317] [the defendant used corporate funds to invest in stock market; repaid the funds periodically, and believed owner (defendant's father-in-law) had given him permission to do so].)

In *Holmes,* the defendant was hired to clean the victim's garage. The defendant took some of the items in the garage. The defendant claimed the victim owed him money for cleaning the garage and did not intend to pay. The defendant believed this entitled him to take property to offset the debt. We found the contention that there was a claim-of-right defense to be unmeritorious and noted that "Penal Code section 511 provides that the unlawful retention of the property of another to offset or pay demands held against him is no defense to a charge of embezzlement." (*People* v. *Holmes, supra,* 5 Cal.App.3d at p. 24, fn. omitted.)

Where a defendant is charged with embezzlement and relies on a defense of claim-of-right, which is supported by the evidence, the trial court must instruct sua sponte on the defense. (*People* v. *Stewart, supra,* 16 Cal.3d at p. 138.) However, a claim-of-right instruction need only be given if the defense is supported by the evidence. "Whether or not a given set of facts provides the necessary support for drawing a particular inference is a question of law. Before instructing a jury that it may draw the inference, the trial court must determine that there is evidence on the record which, if believed, will support it. [Citation.] Giving an instruction implies there are factual questions to which the instruction relates. [Citation.]" (*People* v. *Romo* (1990) 220 Cal.App.3d 514, 519 [269 Cal.Rptr. 440].)

In this case, the evidence in the light most favorable to defendant is as follows. Defendant assumed the position of treasurer of the union in 1985. At the time he took the position, he knew no salary accompanied the position. He was aware of the perquisites of the office, which included release time, per diems, airfare bonuses and reimbursement for legitimate expenses. Beginning in 1985, he charged personal expenses to his union credit card. In every month of 1985 through 1990, he paid his personal credit card bills with union funds. The union funds taken for personal expenses ranged from approximately $25,000 to $50,000 on an annual basis. In six years, defendant appropriated over $250,000 of union funds to pay his personal expenses. He believed these amounts were owed to him because of

the time he devoted to union business and the other employment opportunities he was foregoing.[5] There was, however, no correlation between the number of hours worked and the money taken. Defendant did not ask for a salary.[6] He never told anyone he was paying his personal expenses from union funds. He knew that personal credit card bills of other officers were not paid by the union. When first confronted with evidence he was paying personal expenses with union funds, he did not openly admit it, but falsely stated that his union credit card was defective.

We conclude that no substantial evidence of a claim-of-right defense was presented to the embezzlement charge. Even if true, defendant's unilateral determination and unvoiced belief that the money was owed to him by the union for his work is completely insufficient under Penal Code section 511. An employee may not simply decide that he or she should be paid more than the employer has agreed to pay and then take the money from the employer without authorization. Such misappropriations constitute embezzlement and no claim-of-right defense is applicable. Thus, no instructions on a claim-of-right defense were required in this case. Accordingly, any errors in the claim-of-right defense instruction given by the trial court were harmless beyond a reasonable doubt.

II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Turner, P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied January 24, 1995, and appellant's petition for review by the Supreme Court was denied April 13, 1995. Mosk, J., was of the opinion that the petition should be granted.

---

[5]Defendant testified: "I felt I had earned it. And other people were being compensated in different ways, so I just felt that was income that I had earned."

[6]Defendant testified: "Well, I should have just said, hey, I am spending this much time, I want a salary, or I have got to leave. I had to give up extra jobs, give up the real estate situation, and they all knew it. And I just—we had a policy, and unwritten, nobody was to lose money working for the union, and everybody th[e]n understood that."

*See footnote, ante, page 312.