Filed 4/2/24  P. v. Pulley CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICKEY LARNELL PULLEY,<br><br>Defendant and Appellant. | F084815<br><br>(Super. Ct. No. BF183256A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Kieran D. C. Manjarrez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Galen N. Farris and Dina Petrushenko, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Mickey Larnell Pulley (defendant) and Heather Rayford robbed several cigarette cartons from a gas station and a television (TV) from a store. Defendant was convicted of only one count of robbery and sentenced to 10 years in prison. Defendant appeals his conviction and argues that the evidence was insufficient to prove that he did not take the TV under a claim of right, the trial court abused its discretion and denied him a fair trial by excluding evidence of Rayford's exculpatory statements to law enforcement, and that the trial court's instruction to the jury as to his claim-of-right defense was vague and an incorrect statement of the law.

We conclude that defendant's conviction is supported by sufficient evidence, the trial court did not abuse its discretion in excluding Rayford's post-*Miranda*[1] exculpatory statements as untrustworthy, and the trial court's instruction pursuant to CALCRIM No. 1863 was a correct statement of the law. We affirm the judgment.

## PROCEDURAL BACKGROUND

The District Attorney of Kern County filed an information on January 28, 2021, charging defendant with three counts of robbery (Pen. Code, § 212.5, subd. (c); counts 1–3) and alleging as to counts 1 and 3 that defendant had two prior "strike" convictions within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)) and two prior serious felony convictions (Pen. Code, § 667, subd. (a)). As to count 2, the information alleged defendant had only one prior strike conviction.[2] Defendant pleaded not guilty to all counts and denied the allegations.

---

[1]  *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[2]  The prosecutor later characterized the discrepancy between count 2's allegation and the other counts' allegations as "a mistake" and noted that defendant would have been subject to a sentence of 25 years to life if the information had been correct.

The trial court granted the prosecutor's motion to dismiss count 3 prior to trial on July 27, 2021. On August 9, 2021, a jury acquitted defendant of count 1 but could not reach a verdict as to count 2.

Prior to retrial, an amended information was filed in open court on June 21, 2022, which added allegations as to count 2 that defendant engaged in violent conduct indicating a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)) and had been previously convicted of numerous crimes or crimes of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)).[3] After retrial, the jury convicted defendant of robbery as charged in count 2 on June 24, 2022. The trial court found true that defendant had previously been convicted of a prior strike conviction under the Three Strikes law and found true the other sentencing allegations after defendant waived his right to a jury trial.

The trial court denied defendant's motion to dismiss his prior strike conviction and sentenced him on August 17, 2022, to an upper term of 10 years (five years doubled pursuant to Pen. Code, § 667, subd. (e)).[4] Defendant was ordered to pay victim restitution (Pen. Code, § 1202.4, subd. (f)). The court imposed but stayed a $300 restitution fine (Pen. Code, § 1202.4, subd. (b)), a suspended $300 probation revocation restitution fine (Pen. Code, § 1202.45), a $10 crime prevention fee (Pen. Code, § 1202.5), a $30 criminal conviction assessment (Gov. Code, § 70373), and a $40 court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)).

---

[3] The amended information still included counts 1 (for which defendant was acquitted) and 3 (previously dismissed by the court). However, the trial court's opening instructions to the jury clearly indicate that the November 6, 2020 robbery (count 2 in the amended information) was submitted to the jury for decision and redesignated as count 1 on the verdict form.

[4] Defendant failed to appear during his first trial on August 4, 2021; the trial court issued a bench warrant, but the trial continued in his absence. Defendant did not appear for proceedings again until December 20, 2021. In a separate case, defendant was charged with failing to appear in violation of Penal Code section 1320.5. He pleaded guilty and admitted two prior strike convictions with an enhancement pursuant to Penal Code section 12022.1. The trial court dismissed defendant's two prior strike convictions as to that case and imposed an eight-month consecutive term of imprisonment and a stayed term of two years for the enhancement.

Defendant timely appealed on August 17, 2022.

**FACTS**

On November 6, 2020, K.R. was working as an asset protection associate at a store in Kern County. Surveillance recordings show defendant and Rayford entered the store with a boxed, broken TV in a shopping cart and contacted an employee at the customer service counter. The customer service employee pointed to the service policies, and Rayford and defendant placed the broken TV back into the shopping cart and left the counter. Approximately 35 seconds had passed since they entered the store. After receiving a telephone call from customer service, K.R. watched the surveillance cameras and observed defendant and Rayford as they left the customer service area and proceeded toward the electronics department.

After stopping at the TV area, Rayford and defendant removed the broken TV from their cart and replaced it with a new TV from the store's shelf. Rayford and defendant then walked through the sporting goods department and toward the front door without stopping either at customer service or a cashier's register.

K.R. approached defendant and Rayford, identified himself as an asset protection officer, and asked about the new TV. Neither defendant nor Rayford claimed that any employee had given them permission to exchange the TVs. K.R. then attempted to retrieve the new TV from defendant and Rayford. Defendant became violent and aggressively pushed K.R. multiple times as defendant told K.R. that defendant was taking the new TV and that it was the TV he brought with him into the store. K.R. repeatedly told defendant that K.R. had observed them switch TVs and they could not leave with the new TV that they had removed from the store shelf. Other employees, including the customer service representative who had assisted defendant and Rayford when they entered the store, joined K.R. and also advised them that they could not leave with the new TV.

4.

Defendant never claimed that he was allowed to exchange the broken TV or that he had a right to do so. Defendant repeatedly told K.R. that he would "fucking kick [K.R.'s] ass." Concerned for his own safety and the safety of customers, K.R. backed away from Rayford and defendant.

Defendant and Rayford took the new TV from the store shelf outside the store, and defendant reentered the store and proceeded back to the area where they had left the broken TV. Meanwhile, K.R. went outside the store and retrieved the new TV. Rayford took the new TV from K.R.'s hands inside the store and took it outside again. Defendant arrived back at the store entrance and punched K.R. in the face, chest, arms, and legs.[5] Defendant ran outside. Neither defendant nor Rayford paid for the new TV.

The sign at the customer service area stated, "Our goal is to satisfy our customers. We will happily exchange or refund merchandise purchased from [the store] within 90 days of purchase with or without a receipt." However, the sign also stated that some legal restrictions, conditions, and exceptions applied. The store had a policy to accept returns both with and without a receipt and a policy specific to the store's private brand items. The store was not required to exchange an item if it did not desire to do so. A typical merchandise exchange was described during trial testimony: a customer went to the customer service return center; the employee looked up the item purchased in the computer or compared it to a receipt to verify that the item was purchased; and the customer retrieved the item from the floor for exchange and returned to the customer service return center to complete the exchange. A customer was not permitted to return their item to the shelf, take a new item, and leave the store without contact with an employee. Management was consulted to return an item costing over $150 without a receipt, and the employee verified the purchase, the date of the purchase, and the identity of the customer.

---

[5] K.R.'s testimony was corroborated by recordings from the surveillance cameras.

## DISCUSSION

**I.     Defendant's conviction for robbery is supported by sufficient evidence that defendant feloniously took personal property of another without honestly believing that he had a claim of right.**

### A.     Applicable Law and Standard of Review

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether it discloses substantial, credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)  We do not redetermine the weight of the evidence or the credibility of witnesses.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact."].)  We must accept logical inferences that the trier of fact might have drawn from the evidence even if we would have concluded otherwise.  (*People v. Streeter* (2012) 54 Cal.4th 205, 241, overruled on other grounds as stated in *People v. Harris* (2013) 57 Cal.4th 804, 834 (*Harris*).)  "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*Albillar*, at p. 60.)  "Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction."  (*Young*, at p. 1181.)

" 'Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' ([Pen. Code, ]§ 211.)  In *People v. Tufunga* (1999) 21 Cal.4th 935, 950 (*Tufunga*), [our Supreme Court] affirmed that, as at common law, claim of right remains a viable defense to a charge of robbery.  'The claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim

to property he takes from another negates the felonious intent necessary for conviction of theft or robbery.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 872 (*Covarrubias*).)

Penal Code section 511 provides in part: "Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable." While Penal Code section 511 uses the term "embezzlement," our Supreme Court has recognized that Penal Code "section 511 may be read as providing a statutory claim-of-right defense to all theft-related charges" because, in 1927, the Legislature "expanded the statutory basis of the claim-of-right defense for embezzlement to all theft-related offenses when it enacted [Penal Code] section 490a," which provides that any law referring to larceny, embezzlement, or stealing shall be read and interpreted substituting the word "theft." (*Tufunga*, *supra*, 21 Cal.4th at p. 952, fn. 4.)

In addition, " 'a good faith belief by a defendant, tried as an accomplice, that he was assisting his coprincipal retake the principal's property negates the "felonious intent" element of both larceny and robbery.' " (*Covarrubias*, *supra*, 1 Cal.5th at p. 873, citing with approval *People v. Williams* (2009) 176 Cal.App.4th 1521, 1528–1529.)

"[I]t is clear not only from the terms of [Penal Code] section 511 but from statements in numerous authorities that a belief in one's authority to appropriate is a defense only when maintained in 'good faith.' " (*People v. Stewart* (1976) 16 Cal.3d 133, 139 (*Stewart*).) "Subsequent cases have explained that, 'Whether a claim is advanced in good faith does not depend solely upon whether the claimant believes he was acting lawfully; the circumstances must be indicative of good faith.' (*People v. Martin* (1957) 153 Cal.App.2d 275, 283; [citation].) For example, the circumstances in a particular case might indicate that although defendant may have 'believed' he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith." (*Id.* at p. 140.)

7.

**B. Analysis**

We reject defendant's argument that the trial evidence was insufficient to prove that defendant took the new TV "feloniously" and did not appropriate the TV "openly and avowedly, and under a claim of title preferred in good faith." (Pen. Code, § 511.)

The evidence shows that defendant and Rayford entered the store with their broken TV and spoke with someone at the customer return service center before taking it to electronics area. There, defendant and Rayford placed their broken TV on the shelf and placed a new TV into their cart. When they attempted to leave the store without returning to the service center or a cashier's register, K.R. approached defendant and Rayford to prevent them from removing the new TV from the store. When K.R. identified himself and told them that he had seen them take the new TV from the shelf and place the broken TV in its place, defendant told K.R. that the new TV was same broken TV that they had brought into the store. According to K.R., he knew from viewing defendant's activities that this was not true. Defendant and Rayford resisted K.R. and other employees who attempted to retrieve the new TV, grabbed the new TV, and intimidated and struck K.R. These facts are sufficient to support a jury's inference that defendant and Rayford entered the store to exchange a broken TV but, for whatever reason, did not complete the exchange, opting instead to take a new TV without store assistance.

In *Stewart*, our Supreme Court approved of the proposition: " 'Whether a claim is advanced in good faith does not depend solely upon whether the claimant believes he was acting lawfully; the circumstances must be indicative of good faith.' " (*Stewart*, *supra*, 16 Cal.3d at p. 140, citing *People v. Martin*, *supra*, 153 Cal.App.2d at p. 283 (*Martin*).) Defendant did not testify as to whether he took the new TV because he was lawfully entitled to do so. However, "the circumstances in [this] particular case" support the jury's apparent finding that defendant did not believe he acted lawfully or "he was aware

8.

of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith." (*Stewart*, at p. 140.)

The evidence shows that the store had a policy to permit product exchanges if a customer was not satisfied and the return occurred within 90 days of purchase. When defendant approached the customer service counter, he placed the box with the broken TV on the counter. The customer service employee conversed with defendant briefly, reached for the computer (which would have been consistent with checking for information regarding the purchase), but stopped reaching for the computer and then pointed to the return policy on the wall. Defendant placed the broken TV back into his cart and left the counter.

Defendant argues that the jury did not have sufficient evidence of his intent to take the new TV without a good faith belief that he could exchange his broken TV because no employee testified as to what transpired when defendant brought his broken TV to the customer service return center upon entering the store. However, the evidence is sufficient to support an inference that the circumstances of defendant's purchase did not conform to store policy. K.R. testified that store policy would not have permitted defendant to help himself to a new TV without processing or documenting the exchange, thereby supporting an inference that defendant had not been told to help himself to a new TV. The jury could have inferred that defendant's claim that he could exchange a broken TV without payment or authorization by any store employee was so completely unreasonable as to prove that defendant did not genuinely believe he had a claim of right to the new TV.

The evidence also establishes that a store employee brought defendant and Rayford to K.R.'s attention, and K.R. commenced watching them on surveillance cameras. This supports an inference that K.R. was monitoring their activities with reference to the broken TV they brought from home. When defendant took the new TV from the shelf, K.R. saw defendant and Rayford bypass customer service and the

9.

cashier's registers and knew that they had not purchased the new TV. Because K.R. and the other employees repeatedly attempted to take the new TV from defendant, the evidence supports the inference that defendant was aware of facts that establish he did not have a claim of right to the new TV in good faith. This inference is further supported by K.R.'s testimony that defendant falsely told K.R. that the new TV in defendant's cart was the broken TV defendant brought into the store. As K.R. testified that he observed defendant and Rayford exchange their broken TV for the new TV, the jury could have inferred that defendant did not believe in good faith that he had a right to make the exchange or he would not have lied to K.R. about these circumstances. (See *People v. Clemmons* (1955) 136 Cal.App.2d 529, 535 [evidence that Clemmons's bookkeeper testified that he ordered her to prepare false entries on ledger sheets to be submitted to victim was substantial evidence of Clemmons's bad faith].)

Defendant argues that the evidence shows he openly took the broken TV to customer service, openly exchanged it for a new TV, and openly pushed the cart carrying the new TV toward the exit. However, as we discussed, the evidence supports the jury's inference that the store did not agree to exchange defendant's broken TV, but he did so anyway. Evidence that defendant was aware of facts that made exchanging the broken TV so completely unreasonable as to prove he did not honestly believe that he could do so is shown by defendant's failure to take the new TV to a store employee to make the exchange, leaving the broken TV on the shelf with new TVs, and his false statements to K.R. that he had not made the exchange and the new TV was his broken TV. Additionally, the store employees' reactions to defendant removing the new TV from the store provided ample notice to defendant that the store did not agree to the exchange, and defendant resorted to force and intimidation to take the new TV, which would not have been needed for a store-authorized exchange. The jury could have inferred that if the store had approved the exchange, it would not have been necessary for defendant to lie to K.R., avoid the customer service return center when leaving the store, or resort to force to

10.

take the new TV. Defendant's argument ignores K.R.'s testimony that, when leaving the store, defendant attempted to conceal that the TV in his possession was a new TV and falsely stated that it was his broken TV.

Defendant argues that his mistaken belief that he could replace his broken TV with a new TV was not enough to establish bad faith as a matter of law. Whether or not defendant believed that the store should have permitted the exchange pursuant to its policy and that his actions were lawful, the question for the jury was whether, under the circumstances, defendant actually believed in good faith that he had a right to take the new TV. (See *Stewart*, *supra*, 16 Cal.3d at p. 140, citing *Martin*, *supra*, 153 Cal.App.2d at p. 283.) The evidence shows that defendant brought back the broken TV to exchange it but does not prove as a matter of law that defendant mistakenly believed that he could do so. The jury's verdict shows that it rejected defendant's argument that he took the new TV from the store believing in good faith that he had right to do so and concludes that defendant took the new TV because the store had not agreed to exchange it. Defendant's disagreement with the store's decision does not establish that defendant believed he had a lawful claim of right to the new TV. The circumstances provide substantial evidence that defendant took the new TV despite knowing that he was not entitled to exchange his broken TV. While defendant points to facts that might support his good faith, we find that evidence and logical inferences the trier of fact might have drawn from the evidence provide substantial evidence to support the verdict, whether or not we would have concluded otherwise if faced with the jury's decision. (See *People v. Streeter*, *supra*, 54 Cal.4th p. 241.)

## II. The trial court did not abuse its discretion in excluding Rayford's statements to law enforcement.

### A. Background

At the first trial, the prosecutor prepared a redacted transcript of Rayford's interview with Detective Dunn and intended to introduce only statements as to the gas

11.

station robbery. Rayford's attorney moved to introduce her statements as to the store robbery as well, pursuant to Evidence Code section 1250,[6] as evidence of Rayford's state of mind and that she believed that she had a right to exchange the broken TV. The trial court ruled that "in light of the testimony that came out yesterday regarding … the loss prevention agent, I don't see any harm in allowing [Rayford's counsel] to get into the Rayford-Dunn conversation." The trial court instructed the prosecutor to read that portion of the transcript during her examination of Detective Dunn.

Rayford's statements that were read into evidence by Detective Dunn (during the first trial) had been edited to omit any reference to defendant so as not to violate defendant's right to confrontation under the *Aranda-Bruton* doctrine. (See *People v. Aranda* (1965) 63 Cal.2d 518, 530 [admission of a facially incriminating statement of a nontestifying codefendant at a joint trial deprives defendant of their Sixth Amendment right to confront witnesses], superseded by constitutional amendment as stated in *People v. Fletcher* (1996) 13 Cal.4th 451, 465; *Bruton v. United States* (1968) 391 U.S. 123, 127–128.) Detective Dunn testified that he spoke with Rayford after advising her of her *Miranda* rights. When asked about the store robbery, Rayford told Dunn, " 'They wouldn't exchange the TV when all I was trying to do was bring … the TV back' " and " 'exchange it for another one.' " Rayford explained that the TV she brought back to the store was broken and would not turn on. Rayford stated that she left the store with a new TV after taking it from the loss prevention employee and it was it currently in the residence.

The complete transcript of Rayford's interview includes her statements that she and defendant were "bringing back a TV and they though[t] we's tryna' steal the TV but no, they wouldn't uhh cause we couldn't exchange the TV, they wouldn't let us exchange the TV when all we was tryna' do was bring … our TV back" and "exchange it for

---

**6** Undesignated statutory references are to the Evidence Code.

another one." Rayford explained that the broken TV was not working and they were "just trying to exchange it and they wouldn't let us." Rayford also agreed that that she and defendant exchanged the broken TV themselves and they "[were] in the right so we got our TV." When Detective Dunn asked whether they had problems with the employees, Rayford responded, "[T]hey [were] in the wrong cause at the end of the day like, we [were] suppose[d] to get it … like we got our TV at the end of the day. We were supposed to get our like the brand new TV." Rayford also told Detective Dunn that she and defendant purchased the broken TV, but they did not have the receipt.

Prior to retrial, defendant moved to admit Detective Dunn's prior testimony of Rayford's statements as the admission of a party opponent pursuant to section 1220 and, joined by Rayford, as "evidence of a statement of the declarant's then existing state of mind …: [¶] (1) … offered to prove the declarant's state of mind … at that time or any other time when it is itself an issue in the action; or [¶] (2) … offered to prove or explain acts or conduct of the declarant" pursuant to section 1250, subdivision (a)(1) and (2). Defendant's counsel argued that the statements were being used against Rayford, "as it is a disserving statement for her," because she admitted being depicted in the surveillance video and grabbing the new TV from K.R., but defendant's counsel failed to address what relevance Rayford's statements had to defendant's case and did not explain how the statements would be used against defendant. Rayford's counsel argued to admit the statements as evidence of Rayford's state of mind and her intent to exchange the broken TV.

The trial court treated the request as one to admit the prior testimony of Detective Dunn, who was unavailable for trial, and initially denied the request because Rayford's statement admitted at the first trial had been changed so as not to mention defendant. The court therefore excluded the prior testimony under section 352 as prejudicial and misleading.

13.

Defendant and Rayford requested the court reconsider its rulings on their motions for Rayford's statements to be admitted under sections 1220 and 1250. The trial court concluded that, as to Rayford, her statements reflected her state of mind at a time *before* she made the statements (as opposed to her state of mind at the time that she made the statement) and, therefore, section 1250 did apply. The trial court also recognized that Rayford made the statements at a time when she had a motive to lie to avoid arrest and, therefore, the statements were untrustworthy. The trial court further recognized that because the statements concerned Rayford's state of mind at a prior time and she was available to testify, the statements could not be admitted as statements regarding her prior state of mind.[7] As to defendant, the trial court also found that Rayford's statements did not qualify as statements of a party opponent (§ 1220) because they were not trustworthy. The trial court denied defense counsels' request for reconsideration.

## B. Applicable Law and Standard of Review

Defendant argues the trial court abused its discretion by excluding evidence of statements Rayford made to Dunn after she received *Miranda* warnings. " 'We review claims regarding a trial court's ruling on the admissibility of evidence for abuse of discretion.' " (*People v. Henriquez* (2017) 4 Cal.5th 1, 31.) "The trial court is vested with broad discretion in determining the admissibility of evidence. [Citation.] This is particularly true where, as here, underlying that determination are questions of relevancy, the state of mind exception to the hearsay rule and undue prejudice. [Citation.] The lower court's determination will be reversed only upon a finding of abuse." (*People v. Ortiz* (1995) 38 Cal.App.4th 377, 386.) We review the ruling, not the rationale: "The ruling must be upheld if the evidence was admissible under any hearsay exception." (*People v. Karis* (1988) 46 Cal. 3d 612, 635.) Our analysis may differ from that of the

---

[7] Section 1251 permits statements of a declarant's state of mind at a prior time to be admitted as evidence of the declarant's state of mind if the statements are trustworthy and the declarant is unavailable as a witness.

trial court because " 'we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 351, fn. 11.)

"Except as otherwise provided by statute, all relevant evidence is admissible." (§ 351.) However, pursuant to section 1200 (the principal hearsay provision), out-of-court statements are inadmissible as hearsay when they are offered to prove the truth of the matter stated, with specified exceptions. Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (§ 1200, subd. (a).) Hearsay is not admissible unless it meets the requirements of one of the exceptions set forth in sections 1220–1390. (§ 1200, subd. (b); see also *People v. DeHoyos* (2013) 57 Cal.4th 79, 132.)

### 1. Section 1220.

Section 1220 provides for admission of statements made by a party opponent if offered against that party. To be admissible, the statements must have been made by the declarant, be offered against the declarant, and the declarant must be a party to the action. (*People v. Rodriguez* (2014) 58 Cal.4th 587, 637 (*Rodriguez*).) "While 'sometimes referred to as the exception for admissions of a party,' Evidence Code section 1220 'covers all statements of a party, whether or not they might otherwise be characterized as admissions.' " (*People v. Gonzalez* (2021) 12 Cal.5th 367, 409 (*Gonzalez*).)

Where a declarant's statements are circumstantial evidence of the declarant's state of mind and not dependent on the truth of the statements or offered to prove the truth of the statements, such statements are not hearsay and are admissible. (*Harris*, *supra*, 57 Cal.4th at p. 843.) Direct out-of-court statements describing a declarant's state of mind are hearsay if offered to prove the truth of the matter stated, but admissible to prove the declarant's state of mind or conduct if they satisfy sections 1250 or 1251. (See *Harris*, at p. 843; *People v. Ortiz*, *supra*, 38 Cal.App.4th at pp. 387–388, 389.)

15.

## 2. *Sections 1250, 1251, 1252.*

Sections 1250 and 1252 provide for admissibility of trustworthy (§ 1252) statements offered to prove the state of mind of the declarant at the time that the statement was made (§ 1250, subd. (a)(1)) or to prove or explain acts or conduct of the declarant (§ 1250, subd. (a)(2)). Section 1250, subdivision (a) provides in relevant part: "[E]vidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan … ) is not made inadmissible by the hearsay rule when:  [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant." However, "[t]his section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed." (§ 1250, subd. (b).)

Similarly, sections 1251 and 1252 provide for admissibility of trustworthy (§ 1252) statements offered to prove the state of mind of the declarant prior to the time that the statement was made (§ 1251). Section 1251 provides in relevant part: "[E]vidence of a statement of the declarant's state of mind, … (including a statement of intent … ) at a time prior to the statement is not made inadmissible by the hearsay rule if: [¶] (a) The declarant is unavailable as a witness; and [¶] (b) The evidence is offered to prove such prior state of mind, … when it is itself an issue in the action and the evidence is not offered to prove any fact other than such state of mind .…"

Sections 1250 and 1251 specifically make admission of such statements subject to section 1252, which provides that these hearsay exceptions are inapplicable "if the statement was made under circumstances such as to indicate its lack of trustworthiness." " ' "The decision whether trustworthiness is present requires the court to apply to the peculiar facts of the individual case a broad and deep acquaintance with the ways human beings actually conduct themselves in the circumstances material under the exception.

16.

Such an endeavor allows, in fact demands, the exercise of discretion." ' [Citation.] 'To be admissible under Evidence Code section 1252, statements must be made in a natural manner, and not under circumstances of suspicion, so that they carry the probability of trustworthiness. Such declarations are admissible only when they are " 'made at a time when there was no motive to deceive.' " ' " (*People v. Ervine* (2009) 47 Cal.4th 745, 778–779 (*Ervine*).)

### C. Analysis

*1.    The trial court did not abuse its discretion in finding that Rayford's post-*Miranda *statements were not admissible pursuant to section 1220.*

The trial court excluded Rayford's statements after finding that they were not trustworthy. Defendant argues that the trial court erred in finding that the statements were not trustworthy. Although not raised by defendant, section 1220 has no requirement that the statements must be trustworthy.[8] (See § 1220.) However, we conclude that the trial court properly found that Rayford's statements were not within this hearsay exception because the statements were not offered *against* Rayford, as we discuss below, and we uphold the trial court's ruling on this basis.

Nothing in the text of section 1220 suggests that a statement must first be determined trustworthy as a foundational requirement for its admission as evidence. (See § 1220.) "The only preliminary fact that is subject to dispute is the identity of the declarant," and "an admission is admissible upon the introduction of evidence sufficient

---

[8]    The trial court may have been ruling on admissibility pursuant to section 1230, a hearsay exception for declarations against one's penal interest when the declarant is unavailable, the declaration was against the declarant's penal interest when made, and the declaration was sufficiently reliable or trustworthy when it was made to warrant admission despite its hearsay character. (See *People v. Grimes* (2016) 1 Cal.5th 698, 711.) While defendant's counsel did not refer to this exception by code section, she argued that the statements were disserving to Rayford as they placed Rayford at the scene of the crime and argued that Rayford was unavailable as a witness due to Rayford's Fifth Amendment privilege not to testify.

to sustain a finding that the party made the statement." (Cal. Law Revision Com. com., Deering's Ann. Evid. Code (2021 ed.) foll. § 403, p. 400; see Assem. Com. on Judiciary com., reprinted at 29B pt. 1B West's Ann. Evid. Code (2011 ed.) foll. § 403, p. 20.) Furthermore, the California Supreme Court has repeatedly applied section 1220 without including a finding of trustworthiness as a foundational requirement. (See *People v. Becerrada* (2017) 2 Cal.5th 1009, 1024 [statements admissible because Becerrada wrote the statements, he was a party, and the statements were offered against him]; *Rodriguez*, *supra*, 58 Cal.4th at p. 637 [to be admissible, the statements must have been made by the declarant, be offered against the declarant, and the declarant must be a party to the action]; *Gonzalez*, *supra*, 12 Cal.5th at p. 409 [same]; *People v. Horning* (2004) 34 Cal.4th 871, 898 [same]; *People v. Carpenter* (1999) 21 Cal.4th 1016, 1049 [same].)

Nonetheless, the trial court did not abuse its discretion in excluding Rayford's statements because defendant did not offer the statements *against* Rayford, the declarant, as section 1220 and relevant case authorities require. As already discussed, evidence of the statement of a party, in order to be admissible under the hearsay exception set forth in section 1220, must be offered against the declarant party. (§ 1220; *People v. Becerrada*, *supra*, 2 Cal.5th at p. 1024; *Rodriguez, supra*, 58 Cal.4th at p. 637; *Gonzalez, supra*, 12 Cal.5th at p. 409; *People v. Horning*, *supra*, 34 Cal.4th at p. 898; *People v. Carpenter*, *supra*, 21 Cal.4th at p. 1049.)

Our Supreme Court, in *People v. Flinner* (2020) 10 Cal.5th 686, analyzed Flinner's argument that the trial court erred in permitting a witness to testify to two separate conversations the witness had with Flinner after the victim's death in which Flinner expressed remorse that he had killed the victim. (*Id*. at pp. 734–735.) Flinner was jointly tried with his codefendant, and his codefendant called the witness to testify to Flinner's statements. The court held that the trial court did not err in admitting the statements "whether we focus on the statement of party opponent exception in Evidence Code section 1220 or the statement against interest exception in Evidence Code

18.

section 1230." (*Id.* at p. 735.) As to the first exception, the court held that while the prosecution did not offer the statement against Flinner, "it was nonetheless 'offered against' Flinner within the meaning of Evidence Code section 1220" because the codefendant's defense was antagonistic to Flinner's. (*Ibid.*) Flinner's codefendant sought to prove that Flinner manipulated him into participating in the killing while Flinner denied any involvement. Flinner's statements clearly helped the codefendant's case while harming Flinner's defense. (*Ibid.*)

*People v. Flinner* established that, in a criminal case, the prosecutor is not the only party who may offer a defendant's statement pursuant to section 1220 but also reinforced that the proponent of the evidence must offer the evidence " 'against' " the declarant. (*People v. Flinner*, *supra*, 10 Cal.5th at p. 735.) To be relevant under section 1220, " 'the statement must assert facts which would have a tendency in reason either (1) to prove some portion of the proponent's cause of action, or (2) to rebut some portion of the party declarant's defense.' " (*Flinner*, at p. 736.)

In a criminal case, the statement must rebut some portion of the declarant's defense, as criminal cases do not involve a "cause of action." The primary thrust of defendant and Rayford's defense was that they took the new TV under a claim of right and had a good faith belief that their claim was lawful. As such, defendant did not intend to use Rayford's statements to rebut some portion of Rayford's defense, but rather, intended to use it to establish that they intended to exchange their broken TV for a new TV because they honestly believed they were lawfully entitled to do so. During closing arguments, defendant's counsel argued that defendant "absolutely had [the] good faith belief required by law" that he a right to the new TV. Defendant's counsel argued various facts in evidence that supported defendant's good faith belief, including that defendant never to tried to hide what he did. Defendant's counsel's entire closing argument addressed defendant's good faith belief that he could exchange the broken TV

19.

for a new TV himself, and counsel told the jury, "That is why we are here." Rayford's counsel made the same argument in closing.

Defendant even continues to rely on claim-of-right arguments on appeal in arguing sufficiency of the evidence and, as discussed below, that the claim-of-right jury instruction was legally incorrect. Defendant and Rayford both asserted a claim of right to rebut their intent to steal, and defendant never shifted blame to Rayford. Defendant's manifest primary interest in presenting the evidence to the jury was to exculpate himself and Rayford rather than to inculpate Rayford, the declarant. Therefore, we conclude the hearsay exception for a statement of a party set forth in section 1220 did not apply and thus the trial court properly excluded that evidence, although the basis for its decision might have been erroneous.

> 2. *The trial court did not abuse its discretion in finding that Rayford's post-*Miranda *statements were not admissible pursuant to section 1250.*

Defendant states that Rayford's statements were admissible pursuant to section 1250 in passing, without addressing the trial court's contrary ruling that Rayford's statements after the robbery did not come within the exception which would only permit evidence of statements made at the time of the robbery as proof of her state of mind during the robbery. Defendant only argues that the trial court abused its discretion to exclude the statements as untrustworthy, an argument we address below. However, we conclude that the trial court did not abuse its discretion to exclude Rayford's post-*Miranda* statements on the basis that they were not made contemporaneously with her state of mind at the time of the robbery.

Section 1250, subdivision (a) provides an exception to the hearsay rule for a statement of the declarant's *then existing* state of mind (that is, at the time the statement was made) and if offered to prove the declarant's state of mind "*at that time or at any other time when it is itself an issue in the action.*" (§ 1250, subd. (a)(1), italics added.)

20.

Defendant defended against the robbery charge, arguing that he believed that he had the right to take the new TV from the store and exchange it for the broken TV. This defense placed defendant's state of mind at the time of the robbery in issue. However, defendant did not seek to admit Rayford's statements as evidence of his own state of mind.

Even if Rayford's state of mind could be used as evidence of defendant's state of mind, Rayford's statements were not made at the time of the robbery, but her post-*Miranda* statements described her past state of mind at the time of the robbery. The trial court's exclusion of the statements as past state of mind and hearsay is supported by our Supreme Court's decision in *People v. Whitt* (1990) 51 Cal.3d 620 (*Whitt*). At his retrial, Whitt attempted to introduce statements he made during a prison interview which discussed his past exploits, past feelings, and his new attitude toward life. (*Id.* at p. 641.) Whitt sought to introduce his out-of-court statements to prove past events and feelings that he described in the statements and, therefore, the Supreme Court concluded that the evidence was hearsay. (*Id.* at p. 642.)

The Supreme Court further held that "[c]ontrary to [Whitt's] assertion, the mental state exception to the hearsay rule does not apply. ([§ 1200], § 1250, subd. (a).) The exception is limited to out-of-court statements describing a relevant mental state being experienced by the declarant *at the time* the statements were made. (1 Jefferson, Cal. Evidence Benchbook (2d. ed. 1982) § 14.1, pp. 383–384.) [Whitt's] statements on two topics—events and feelings experienced *before* the interview—do not fit this description, and are inadmissible to prove their truth."[9] (*Whitt*, *supra*, 51 Cal.3d at pp. 642–643, fn. omitted.) The court also recognized that "statements recounting past events are an implicit expression of the declarant's belief or memory that such events occurred, and are

---

[9] The court recognized that Whitt's statements concerning his then existing feelings of Christian rebirth satisfied section 1250, subdivision (a) but concluded the trial court did not err because the statements were not trustworthy, as they had been made while Whitt was seeking a retrial. (*Whitt*, *supra*, 51 Cal.3d at p. 643.)

inadmissible for their truth under section 1250, subdivision (b),'" which specifically

excludes evidence of a statement of memory or belief to prove the fact remembered or

believed. (*Id*. at p. 643, fn. 13, citing 1 Jefferson, *supra*, § 14.1, at pp. 385–386.)

Therefore, section 1250 is limited to admitting out-of-court statements that describe the

declarant's relevant mental state at the time the statements were made.

In this case, defendant attempted to admit Rayford's statements to Detective Dunn

after the store robbery. If Rayford's state of mind at the time of the interview was

relevant to an issue in the case, such statements would be admissible to prove her state of

mind while speaking with Dunn pursuant to section 1250, subdivision (a). However,

Rayford's state of mind while speaking to Dunn was not relevant to defendant's claim-of-

right defense, which was dependent upon his own state of mind at the time of the

robbery. Statements after the robbery are inadmissible hearsay because they purport to

explain Rayford's state of mind at the time of the robbery and are excluded by

section 1250, subdivision (b).

The trial court did not abuse its discretion in excluding Rayford's later statements

describing her and defendant's state of mind at the time of the store robbery.[10]

> 3. *The trial court did not abuse its discretion in ruling that the hearsay statements were made under circumstances indicating a lack of trustworthiness.*

But even if defendant's hearsay statements were otherwise admissible under the

state of mind exception (§ 1250, subd. (a)(1)), such evidence may be rendered

inadmissible if circumstances indicate the statements lack trustworthiness as required by

section 1252. (*Harris*, *supra*, 57 Cal.4th at pp. 843–844; § 1252.) The trial court did not

---

[10] We note that section 1251 permits the admission of the declarant's statements of a past mental state that would otherwise be hearsay if the declarant is unavailable and the statements are otherwise trustworthy. (§§ 1251, 1252.) Defendant does not address the admissibility of Rayford's statements with reference to section 1251. However, the trial court's finding that Rayford's statements were not trustworthy would also support exclusion of the evidence pursuant to this section.

abuse its discretion in excluding defendant's post-*Miranda* statements because they were not trustworthy.

A statement is trustworthy within the meaning of section 1252 when it is " ' "made in a natural manner, and not under circumstances of suspicion" ' " (*Harris*, *supra*, 57 Cal.4th at p. 844) or " ' "at a time when there was no motive to deceive" ' " (*People v. Edwards* (1991) 54 Cal. 3d 787, 820 (*Edwards*), overruled on other grounds in *People v. Diaz*, (2015) 60 Cal.4th 1176, as stated in *People v. McDaniel* (2021) 12 Cal.5th 97, 138). Our Supreme Court has held that a defendant's five-page note, written after shooting an officer and while law enforcement gathered outside waiting to arrest the defendant, were not trustworthy because the circumstances provided "ample ground to suspect his motives and sincerity when he wrote [the] self-serving documents." (*Ervine*, *supra*, 47 Cal.4th at pp. 777, 779.) The Supreme Court also rejected another defendant's attempt to introduce a notebook containing his thoughts, written nine days after he murdered someone, and an interview with law enforcement concerning the crime. (*Edwards*, at pp. 818–819). In *Edwards*, the Supreme Court concluded that the trial court did not abuse its discretion in excluding the statements as untrustworthy because " '[a] defendant in a criminal case may not introduce hearsay evidence for the purpose of testifying while avoiding cross-examination." (*Id*. at p. 820.) There is " 'ample ground to suspect [a] defendant's motives and sincerity' " when a defendant makes statement about a crime he committed when they are under suspicion and possessed the motive to deceive and exonerate themselves. (*Ibid*.) "The need for cross-examination is especially strong in this situation, and fully warrants exclusion of the hearsay evidence." (*Ibid*.)

Here, Rayford told Detective Dunn that she had been attempting to return a broken TV in exchange for a new one, but store employees would not permit the exchange. Rayford described that she and defendant took the new TV and were eventually permitted to leave the store with it because they were right. She made these statements in response to questioning by Dunn, who was attempting to determine what had transpired at the

23.

store. If Rayford believed that she had a right to the new TV based upon the store's policies, this would be a defense to robbery. Therefore, Rayford plainly had a motive to fabricate a story for the law enforcement officers in an attempt to escape responsibility for the robbery.

Defendant fails to provide any analysis of whether Rayford's statements were trustworthy within the meaning of section 1252 and argues only that the trial court failed to consider that defendant's "taking had been unconcealed, open and notorious" and "bespeaks honesty of intent and belies stealth." Regardless, we conclude that the trial court did not abuse its discretion in finding that the circumstances of defendant's attempt to return a broken TV were not sufficient to establish the trustworthiness of Rayford's statements to Detective Dunn after the robbery. Rayford claimed that she and defendant were right to take the new TV themselves, but the circumstances surrounding robbery shows only that they entered the store to return the broken TV, not that their actions thereafter were based on a good faith belief that they could lawfully take the new TV without the assistance of store personnel and when store personnel opposed their efforts to take it.

Based on the case law and the circumstances surrounding the store robbery and Rayford's post-*Miranda* statements, we conclude that the trial court did not abuse its discretion in finding Rayford's statements to be untrustworthy pursuant to section 1252 because they were not made in " 'a natural manner' " or " ' " 'at a time when there was no motive to deceive.' " ' " (*Ervine*, *supra*, 47 Cal.4th at pp. 778–779.)

### D. The Trial Court's Evidentiary Rulings Did Not Deprive Defendant of His Right to Due Process to Present a Defense

Defendant argues that the trial court's determination as to whether Rayford's statements were trustworthy "exceeded the proper and constitutional scope of its discretion," "usurped the exclusive prerogative of the jury to weigh evidence and the credibility of witnesses," and "deprived [defendant] of a jury trial on his defense and on

an element of the charged offense." Defendant's only authority for this proposition is an argument that "[t]he court's error stood at the intersection of *Crawford* [*v. Washington* (2004) 541 U.S. 36] and *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466]." Neither case addresses whether specific rules of evidence that require a trial court to make a preliminary determination as to trustworthiness violate defendant's constitutional rights.

However, defendant's argument that the trial court's exclusion of Rayford's statements deprived him of his constitutional right to present a complete defense is unavailing. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment [citation], or in the Compulsory Process or Confrontation clauses of the Sixth Amendment [citations], the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " (*Crane v. Kentucky* (1986) 476 U.S. 683, 690.) However, "[a] defendant's right to present relevant evidence is not unlimited …. [Citations.] A defendant's interest in presenting such evidence may thus ' "bow to accommodate other legitimate interests in the criminal trial process." ' " (*United States v. Scheffer* (1998) 523 U.S. 303, 308, fn. omitted.) One such interest is adherence to standard rules of evidence. (*Taylor v. Illinois* (1988) 484 U.S. 400, 410; *People v. Gonzales* (1994) 22 Cal.App.4th 1744, 1756.) The rules codified in sections 1220, 1250, and 1251 that govern the admissibility of a statement of a party or statements of a declarant's state of mind are such standard rules of evidence.

Our own Supreme Court has recognized that " '[a]lthough [a] defendant had a constitutional right to have the jury hear all mitigating evidence …, "a … defendant has no federal constitutional right to the admission of evidence lacking trustworthiness, particularly when the defendant seeks to put [their] own self-serving statements before the jury without subjecting [themselves] to cross-examination." ' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 285.) In *Edwards*, the Supreme Court rejected the argument that Edwards was denied the right to present a defense by exclusion of his post-crime statements in a notebook and to law enforcement because they were inherently

untrustworthy, and Edwards "was fully allowed to present a defense.  He could have testified had he so chosen.  [Citation.]  [Edwards] has no right to effectively 'address the jury without subjecting himself to cross-examination.' " (*Edwards*, *supra*, 54 Cal.3d at p. 821.)  In this case, defendant was fully allowed to present the defense, could have testified to present evidence of his state of mind at the time of the robbery, and had no right to address the jury without subjecting himself to cross-examination.

Defendant's reliance on *Chambers v. Mississippi* (1973) 410 U.S. 284 (*Chambers*) is misplaced.  In *Chambers*, Chambers was charged with murder, but another person confessed to friends that the person was the killer and later signed a sworn confession. (*Id*. at pp. 287–288.)  When called as a witness by the defense, however, the person repudiated his confessions.  (*Id*. at p. 288.)  The state court prevented the defense from impeaching its own witness under an antiquated state rule of evidence, and excluded the confessions because Mississippi had no exception to the hearsay rule for statements against penal interest.  (*Id*. at pp. 295–296, 299.)  The United States Supreme Court concluded that Chambers's right to due process had been violated because the evidence was critical, and the state court ignored overwhelming indicia that the hearsay confessions were reliable.  (*Id*. at pp. 297–298, 302–303.)

*Chambers*, however, "was an exercise in highly case-specific error correction" where erroneous evidentiary rulings combined to rise to a due process violation and does not hold that a defendant is denied their constitutional right to defend whenever critical evidence is excluded.  (*Montana v. Egelhoff* (1996) 518 U.S. 37, 52; see *People v. Ayala* (2000) 23 Cal.4th 225, 269 [a defendant does not have a constitutional right to the admission of unreliable hearsay].)  But even *Chambers* required that the excluded evidence have substantial indications of reliability, and our Supreme Court has held that " '[t]he same lack of reliability that makes … statements excludable under state law makes them excludable under the federal Constitution.' " (*People v. Butler* (2009) 46 Cal.4th 847, 867.)

Here, the exclusion of evidence was a garden-variety evidentiary issue and thus did not implicate defendant's federal constitutional right to present a defense. Further, defendant has not shown Rayford's statements bore persuasive assurances of trustworthiness similar to the statements in *Chambers*, which were made spontaneously to a friend shortly after the murder occurred, were unquestionably against the declarant's interest, and were corroborated by other evidence in the case. (See *Chambers*, *supra*, 410 U.S. at pp. 291–293, 300, 301.)

Therefore, because the trial court did not abuse its discretion in concluding that Rayford's statements lacked trustworthiness, the trial court did not violate defendant's federal constitutional rights by excluding them. Accordingly, defendant has failed to demonstrate a due process violation.

**III. The trial court's instruction pursuant to CALCRIM No. 1863 (Defense to Theft or Robbery: Claim of Right (Pen. Code, § 511)) was a correct statement of the law.**

**A. Background**

The parties met with the trial court in an off-the-record conference concerning the jury instructions and received thereafter an edited version of the jury instructions from the court. The court agreed to instruct with CALCRIM No. 1863 which provides in part:[11]

> "If the defendant obtained property under a claim of right, (he/she) did not have the intent required for the crime of (theft/ [or] robbery).

> "The defendant obtained property under a claim of right if (he/she) believed in good faith that (he/she) had a right to the specific property or a specific amount of money, and (he/she) openly took it.

---

[11] The trial court's later comments indicate that defendant and Rayford requested CALCRIM No. 1863, most likely in the chambers conference as the court record does not reflect the request.

27.

"In deciding whether the defendant believed that (he/she) had a right to the property and whether (he/she) held that belief in good faith, consider all the facts known to (him/her) at the time (he/she) obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith.

"[The claim-of-right defense does not apply if the defendant attempted to conceal the taking at the time it occurred or after the taking was discovered.]

"[¶] … [¶]

"If you have a reasonable doubt about whether the defendant had the intent required for (theft/ [or] robbery, you must find (him/her) not guilty of _____ <insert the specific crime>." (CALCRIM No. 1863.)

The prosecutor requested that the court instruct the jury with the bracketed language regarding concealment in paragraph four of CALCRIM No. 1863. Defendant's counsel objected to the bracketed language, arguing that it was not applicable given that defendant openly entered and left the store with the TVs, but did not otherwise object to the language of the instruction. Defendant's counsel requested that, if the court were to instruct with the bracketed language, that the court add the following pinpoint language: "[L]ack of concealment may be considered by you as evidence of a good faith belief by the defendant that he or she had a right to the specific property."

The prosecutor also requested the following pinpoint language: "[T]he defense also does not apply where although the defendant may have believed he acted lawfully, he was aware of contrary facts which rendered his belief wholly unreasonable and hence, in bad faith." Defendant's counsel objected to the additional language, arguing that that similar language was already included in CALCRIM No. 1863 and that the instruction "contains the same principles and the same information that is in the case law."

28.

The trial court agreed to include the bracketed language regarding concealment and granted defendant's counsel's request for the additional pinpoint language but denied the prosecutor's request for additional language.

When instructing the jury, the trial court read the first four paragraphs of CALCRIM No. 1863, as set forth above, then the language requested by defendant that "[l]ack of concealment may be considered by you as evidence of a good faith belief by the defendant that he or she had a right to the specific property," followed by the last paragraph of CALRCRIM No. 1863, as set forth above.

## B. Applicable Law and Standard of Review

Defendant argues that the trial court erred instructing the jury with CALCRIM No. 1863 insofar as it provided that the jury could conclude that his belief was not held in good faith if he was aware of facts that made that belief completely unreasonable and the language made the instruction "vague," "misleading," and "incompatible with statutory law." Defendant did not object to the language. "[T]he failure to request clarification of an instruction that is otherwise a correct statement of law forfeits an appellate claim of error based upon the instruction given." (*People v. Rundle* (2008) 43 Cal.4th 76, 151 [Rundle forfeited challenge that rape instruction did not clearly explain meaning of term " 'sexual intercourse' " used in statute], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; accord, *People v. Lee* (2011) 51 Cal.4th 620, 638 ["If [Lee] believed the instruction on consent required elaboration or clarification, he was obliged to request such elaboration or clarification in the trial court."].)

We review de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "Once we have ascertained the relevant law, we determine the meaning of the instructions in this regard. Here, the question is whether there is a 'reasonable likelihood' that the jury understood the charge as the defendant asserts. [Citations.] 'In addressing this question, we consider the specific language under

29.

challenge and, if necessary, the charge in its entirety.  [Citation.]  Finally, we determine whether the instruction, so understood, states the applicable law correctly.' " (*People v. Kelly* (1992) 1 Cal.4th 495, 525–526, first bracketed insertion added (*Kelly*).)  " 'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions.' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433.)

" ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Solomon* (2010) 49 Cal.4th 792, 822.)  We also review the instructions as a whole and presume that jurors are intelligent and able to understand and correlate the trial court's instructions to the facts of the case.  (*People v. Carey* (2007) 41 Cal.4th 109, 130.)

As discussed *ante*, in part I.A., "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (Pen. Code, § 211.)  " 'The claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery.' " (*Covarrubias*, *supra*, 1 Cal.5th at p. 872.)  Penal Code section 511, codifying the defense, provides that it is a defense to embezzlement that "the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable."  Penal Code "section 511 may be read as providing a statutory claim-of-right defense to all theft-related charges."  (*Tufunga*, *supra*, 21 Cal.4th at p. 952, fn. 4 [recognizing that in 1927, the Legislature enacted Pen. Code § 490a, which provides that any law referring to larceny, embezzlement, or stealing shall be read and interpreted substituting the word "theft" and, therefore, "expanded the statutory basis of the claim-of-right defense for embezzlement to all theft-related offenses"].)

### C.    Analysis

We reject defendant's argument that the challenged language in CALCRIM No. 1863 is an incorrect statement of the law.  Defendant's argument is based upon the faulty premise that "good faith" is not a requirement of the defense (or that the reasonableness of his claim of right cannot be used to assess his good faith) and that the instruction erroneously instructed the jury to reject the defense if it found his claim of right to be objectively unreasonable without regard to whether his belief was honest.  We disagree with defendant's arguments.

" ' "Although an intent to steal may ordinarily be inferred when one person takes the property of another, particularly if he [or she] takes it by force, proof of the existence of a state of mind incompatible with an intent to steal precludes a finding of either theft or robbery.  It has long been the rule … that a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent." ' " (*Tufunga*, *supra*, 21 Cal.4th at p. 943.)  " ' "Felonious intent exists only if the actor intends to take the property of another without believing in good faith that he [or she] has a right or claim to it." ' " (*Ibid*.)

Penal Code section 511 codifies the defense and makes it applicable where "the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable."  Our Supreme Court has explained that " ' "untenable" ' " is synonymous with " ' "unlawful. " ' " (*People v. Ranney* (1931) 213 Cal. 70, 77.)  " ' "[I]t was incumbent upon the appellant to prove that she had appropriated the money openly and avowedly, and under a claim made in good faith, but it was not necessary for her to prove that her claim was a valid one upon which she might recover in law.' " (*Ibid*., citing *People v. Ephraim*, 77 Cal.App.29, 35–36.)  Therefore, a defendant's claim of right to property will defeat the felonious intent required for robbery even if the claim of right is not legally valid, or tenable, but it must be held in good faith.  The legal definition of "good faith" is "honesty, fairness, and lawfulness of purpose:

31.

absence of any intent to defraud, act maliciously, or take unfair advantage." (Merriam-Webster Dict. Online (2024) <https://www.merriam-webster.com/dictionary/good%20faith> [as of Apr. 2, 2024]; see *People v. Eastman* (1888) 77 Cal. 171, 172 [where Eastman took a horse that he pledged to his employer because employer owed Eastman: "[i]t is one thing to take and carry off personal property with the intention to steal, and another to take it away under a mistaken idea of legal rights honestly entertained"]. .)

In *Stewart*, Stewart testified that an individual whom he believed to be the sole owner of the company had given him permission to withdraw corporate funds for his personal use from time to time. (*Stewart*, *supra*, 16 Cal.3d at p. 138.) The individual testified that he had permitted Stewart to take some money from the company for home improvements but had no idea of the substantial sums of money Stewart withdrew from the account. (*Ibid.*) Stewart offered an instruction that the trial court refused to read to the jury, which provided that Stewart's belief that he was acting within the scope of his authority was a defense. (*Ibid.*)

The Supreme Court held that Stewart's proposed instruction was an incorrect statement of the law because Stewart failed to include "good faith" as an element of the defense and "it [was] clear not only from the terms of [Penal Code] section 511 but from statements in numerous authorities that a belief in one's authority to appropriate is a defense only maintained in 'good faith.' " (*Stewart*, *supra*, 16 Cal.3d at p. 139.) Stewart argued that if the jury accepted his assertions that he believed he was authorized to take the funds, then the jury would necessarily find that the belief was "bona fide" because "there is simply no such thing as a 'bad faith belief.' " (*Ibid.*) The Supreme Court characterized Stewart's position as rendering the words of Penal Code section 511 and prior cases as meaningless. (*Id.* at p. 139.) The court noted that this contention had been rejected in several cases, including *People v. Holmes*, which rejected a jury instruction that merely stated that defendant's belief was sufficient for the defense because it failed

to include the element of good faith. (*Stewart*, at p. 139, citing *People v. Holmes* (1910) 13 Cal.App. 212, 216–217.)

The Supreme Court rejected Stewart's jury instruction as incomplete for failing to include good faith as well because "[s]ubsequent cases have explained that, '[w]hether a claim is advanced in good faith does not depend solely upon whether the claimant believes he was acting lawfully; the circumstances must be indicative of good faith.' " (*Stewart*, *supra*, 16 Cal.3d at p. 140, citing *Martin*, *supra*, 153 Cal.App.2d at p. 283.) "For example, the circumstances in a particular case might indicate that although defendant may have 'believed' he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith."[12] (*Stewart*, at p. 140.) The quotation marks surrounding the word "believed" indicate that the Supreme Court referred to Stewart's contention or assertion that he had a lawful claim to the property and that circumstances could demonstrate that Stewart did not believe honestly or in good faith that his claim of right was lawful.

CALCRIM No. 1863 provides in pertinent part:

"In deciding whether the defendant believed that (he/she) had a right to the property and whether (he/she) held that belief in good faith, consider all the facts known to (him/her) at the time (he/she) obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. *But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith.*" (CALCRIM No. 1863, italics added.)

---

[12]    The Supreme Court, nonetheless, reversed Stewart's conviction after determining that the trial court erred by not giving, sua sponte, a correct instruction setting forth the claim-of-right theory relied upon by Stewart. (*Stewart*, *supra*, 16 Cal.3d at pp. 140–142.) However, the Supreme Court later held, without discussing *Stewart*, that a trial court does not have a duty to sua sponte instruct on an asserted claim of right in a robbery case because this only tends to negate the prosecution's proof of an element. (*Covarrubias*, *supra*, 1 Cal.5th at p. 873.) In so doing, the Supreme Court explicitly disapproved *People v. Russell* (2006) 144 Cal.App.4th 1415, 1431 on this point, which cited *Stewart* for the proposition. (See *Covarrubias*, at p. 874, fn. 14; *Russell*, at p. 1429.)

33.

The language in CALCRIM No. 1863, italicized above, is drawn from *Stewart*'s observation that "the circumstances in a particular case might indicate that although defendant may have 'believed' he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith." (*Stewart*, *supra*, 16 Cal.3d at p. 140.)

Defendant argues that it is "unexplained dicta" that is vague and confusing as well. The Supreme Court stated that a defendant's awareness of facts that would make his claim of right completely unreasonable could demonstrate that a defendant did not hold the belief in good faith. (*Stewart*, *supra*, 16 Cal.3d at p. 140.) This statement was in direct response to Stewart's argument that his jury instruction did not need to characterize his belief as in good faith because "there is simply no such thing as a 'bad faith belief.' " (*Id*. at p. 139.) Even if the statement was dicta and, therefore, not binding precedent, it is well settled that our high court's " 'dicta generally should be followed, particularly where the comments reflect the court's considered reasoning.' " (*People v. Tovar* (2017) 10 Cal.App.5th 750, 759.)

Defendant also argues that the "completely unreasonable" language in CALCRIM No. 1863 creates an "objectively reasonable" standard of belief that ignores the issue of subjective good faith. As the case law provides, defendant is correct that he cannot be convicted of robbery if he honestly claimed a right to the property, but he misses the mark in arguing that the reasonableness of his actions cannot be considered with reference to whether he believed in good faith (or honestly) that he had a lawful claim to property taken. We disagree and conclude that the clear language of CALCRIM No. 1863 instructed the jury that defendant's claim of right does not have to be correct or reasonable if he believed in good faith that he a right to the property. The instruction is also clear that the reasonableness of the claim of right can, however, be considered by the jury to determine if defendant genuinely, in good faith, believed it.

The Supreme Court described the role that reasonableness plays in ascertaining a defendant's intent in *People v. Hendrix* (2022) 13 Cal.5th 933, 947–948 (*Hendrix*). In *Hendrix*, the Supreme Court reviewed a jury instruction for the defense of mistake of fact in a burglary case where Hendrix claimed that he entered someone else's residence because he was thought it was his cousin's residence. (*Id.* at p. 937.) While not addressing the claim-of-right defense, we find *Hendrix* instructive because the two concepts are similar. The mistake-of-fact defense is available where a defendant lacked the mental state required to commit the crime because of an unreasonable but honest mistaken belief in a fact. (*Id.* at pp. 938–939; *People v. Russell*, *supra*, 144 Cal.App.4th at p. 1425, disapproved on other grounds in *Covarrubias*, *supra*, 1 Cal.5th at p. 874, fn. 14.) Some cases use the term "good faith" to refer to the honest and genuine but mistaken belief. (See *Russell*, at pp. 1426–1427 [when a mistake of fact is offered to negate a specific intent element of an offense, the defense may be established based merely on a showing of good faith, regardless of the objective reasonableness of the mistake]; *People v. Lucero* (1988) 203 Cal.App.3d 1011, 1016–1017; *People v. Vineberg* (1981) 125 Cal.App.3d 127, 137; *People v. Navarro* (1979) 99 Cal.App.3d Supp. 1, 10.) Because "a claim of right may be based on a mistake of fact regarding the defendant's right to take property, as long as the belief is held in good faith," "the defenses can overlap." (*Russell*, at p. 1429.)

In *Hendrix*, the trial court instructed the jury with CALCRIM No. 3406 to guide the jury's consideration of the intent element and the effect of a mistake of fact. (*Hendrix*, *supra*, 13 Cal.5th at p. 938.) "[T]he instruction can be given in two ways, depending on whether the crime is one of general intent—in which case the defendant's belief must be both actual and reasonable—or specific intent, in which case the defendant need hold only an actual but mistaken belief in the relevant fact." (*Ibid*.) Because burglary is a specific intent crime, Hendrix would not have been guilty if he attempted to enter the residence because he actually, though mistakenly, believed his cousin lived

there and did not intend to commit a theft there.  (*Id*. at p. 940.)  However, his belief did not have to be reasonable, and the jury was erroneously instructed that Hendrix must have believed his cousin lived at the residence and his belief was reasonable.  (*Ibid*.)

The parties agreed that burglary required that Hendrix had entered the structure with a particular objective in mind (any felony), but if Hendrix mistakenly believed he was entering his cousin's residence, then his "honest mistaken belief in [that] fact [would] negate the required showing of intent."  (*Hendrix*, *supra*, 13 Cal.5th at p. 939.)  The Attorney General argued that the error was harmless and "rightly note[d] that the jurors were entitled to consider the reasonableness of Hendrix's purported belief as one factor in answering the ultimate question in the case:  whether Hendrix intended to steal or actually and in good faith believed that the house he entered belonged to [his cousin]."  (*Id*. at pp. 947–948.)  As the Supreme Court acknowledged, "It is generally true that a person is less likely to hold an unreasonable belief than a reasonable one, and the jurors were entitled to consider unreasonableness as a factor in this case."  (*Id*. at p. 948, citing *People v. Navarro*, *supra*, 99 Cal.App.3d Supp. 1 at p. 11 [if jury thought Navarro's belief he had a right to take property was unreasonable, it might infer that he did not in good faith hold such belief; Navarro entitled to an acquittal if jury concluded defendant in good faith believed he had the right to the property "even though such belief was unreasonable as measured by the objective standard of a hypothetical reasonable man"].)  Because the jury was not "instructed to consider the reasonableness of Hendrix's belief merely as proof of its genuineness," it may have rejected Hendrix's defense if the jurors concluded that his mistake was unreasonable.  (*Hendrix*, at p. 948.)

Defendant argues, "If there is 'no requirement of reasonableness,' the jury cannot be told that [ ] defendant's claim must have been reasonable."  However, CALCRIM No. 1863 did not instruct the jury to determine whether defendant's claim to the property was reasonable or correct.  In fact, it specifically instructed the jury that defendant may hold a belief in good faith even if the belief is mistaken or unreasonable.  Unlike *Hendrix*,

the jury in defendant's case was instructed to consider the reasonableness of his belief *only* in assessing the genuineness of his belief and not to determine whether the belief was reasonable.

Based upon *Stewart* and *Hendrix*, we conclude that CALCRIM No. 1863 was a correct statement of the law and could not be read by the jury to reject defendant's claim of right if objectively unreasonable but, rather, instructed only that the reasonableness of the claim could be used to determine whether defendant actually or genuinely believed he had a lawful claim to the property. Therefore, we similarly reject defendant's argument that the instruction was misleading because we find no reasonable likelihood that the jury understood the charge to reject defendant's genuine belief if mistaken or unreasonable. (See *Kelly*, *supra*, 1 Cal.4th at p. 525.) "[B]ecause the instruction given was correct, it was incumbent on defendants to request clarifying language. Their failure to do so waived the issue." (*People v. Hardy* (1992) 2 Cal.4th 86, 153.)

Defendant argues that the words " 'completely unreasonable' " are vague and use of those words to infer a lack of good faith promulgates an impermissibly vague standard because it leaves the determination of good faith to "unharnessed juror ideation." Relying on *Johnson v. United States* (2015) 576 U.S. 591 (*Johnson*) and *Sessions v. Dimaya* (2018) 584 U.S. 148, defendant recognizes that these cases did not involve the language of a jury instruction but argues that the cases instruct as to "what makes a term or a phrase unconstitutionally vague." However, in *Johnson*, the United States Supreme Court was analyzing the constitutionality of a federal statute for vagueness under the Fifth Amendment's due process clause, which prohibits taking away someone's life, liberty, or property "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."[13] (*Johnson*, at p. 595.) It did not proport to set a standard for determining

---

[13]    In *Johnson*, the Unites States Supreme Court reviewed title 18 United States Code section 924(e)(2)(B) to determine whether defining a " 'violent felony' " as any felony that

when a jury instruction is erroneous or when a term or phrase is vague. As noted, in assessing whether a jury instruction correctly states the law, we determine the relevant law, whether the instruction accurately states the applicable law, and whether "there is a 'reasonable likelihood' that the jury understood the charge as the defendant asserts." (*Kelly*, *supra*, 1 Cal.4th p. 526.)

Therefore, we conclude that CALCRIM No. 1863 is a correct statement of the law and the trial court did not err by instructing the jury with it.

**DISPOSITION**

The judgment is affirmed.

HILL, P. J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.

---

" 'involves conduct that presents a serious potential risk of physical injury to another' " was unconstitutionally vague. (*Johnson*, *supra*, 576 U.S. at p. 593.) This determination "requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury" rather than evaluating the chances that the physical acts that define the crime will injure someone. (*Id*. at pp. 596, 598 ["[T]he residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction."]; accord, *Sessions v. Dimaya*, *supra*, 584 U.S. at pp. 152, 161–162 [holding 18 U.S.C. § 16(b) that defines "crime of violence" to be unconstitutionally vague].)

38.